# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Wayne Patane,                  :
               Appellant      :
                              :
             v.                 :   No. 973 C.D. 2017
                              :   Argued:  June 6, 2018
Commonwealth of Pennsylvania,         :
Department of Transportation,         :
Bureau of Driver Licensing            :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE ELLEN CEISLER, Judge


**OPINION BY**
**JUDGE COHN JUBELIRER**             **FILED:  August 9, 2018**

Robert Wayne Patane (Licensee) appeals from a June 27, 2017 Order of the Court of Common Pleas of Delaware County (common pleas).  By order dated March 28, 2017, common pleas denied Licensee's appeal from a one-year suspension of his operating privilege imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT), under Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa. C.S. § 1547(b)(1)(i), commonly referred to as the Implied Consent Law.[1]  Subsequently, common pleas

---

[1] Section 1547(b)(1)(i) reads, in pertinent part, as follows:

granted Licensee's Motion for Reconsideration of the March 28, 2017 Order to the extent of holding a hearing thereon, and then effectively confirmed its March 28, 2017 Order in its June 27, 2017 Order.[2] On appeal, Licensee argues that he did not knowingly and consciously refuse a chemical test of his blood and was, therefore, deprived of procedural due process of law. He claims this is because the Pennsylvania State Police Trooper who stopped him provided him with "partially incorrect" information, telling him that he would be subject to enhanced criminal penalties if he refused the blood test and was convicted of driving under the influence of alcohol (DUI). (Licensee's Brief (Br.) at 8.) It was shortly after Licensee's arrest that the United States Supreme Court decided *Birchfield v. North Dakota*, 579 U.S. __, 136 S. Ct. 2160 (2016), which held that a state may not impose criminal penalties on a motorist for refusing to submit to a chemical test of his blood requested pursuant to an implied consent law. Licensee argues that, had he been correctly informed that only his operating privilege would be suspended if he refused a chemical test of his blood, consistent with *Birchfield*, then he would have submitted to the test. We

---

(1) If any person placed under arrest for a violation of section 3802 [relating to driving under the influence of alcohol or controlled substance] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:
  (i) Except as set forth in subparagraph (ii), for a period of 12 months.

75 Pa. C.S. § 1547(b)(1)(i).

[2] Licensee filed a notice of appeal from the March 28, 2017 Order, but once common pleas granted reconsideration by its April 20, 2017 Order, we struck that notice of appeal. Thereafter, following a hearing, common pleas denied Licensee's Motion for Reconsideration. Ordinarily, the denial of a motion for reconsideration is not appealable. *Thorn v. Newman*, 538 A.2d 105, 108 (Pa. Cmwlth. 1988). However, here, common pleas in effect granted reconsideration and then confirmed its March 28, 2017 Order denying Licensee's appeal of the suspension of his operating privilege, which is appealable.

2

conclude that Licensee knowingly and consciously refused chemical testing, and he was not deprived of procedural due process. The Pennsylvania State Police Trooper provided Licensee with a warning that was accurate at the time it was given. While the portion of the warning about enhanced criminal penalties was retroactively rendered inaccurate following *Birchfield*, Licensee's refusal at the time was still knowing and conscious and he was not deprived of procedural due process by the suspension of his operating privilege. This is because Licensee knew, as the Pennsylvania State Police Trooper had conveyed it to him, that if he refused chemical testing he would be in violation of the law and he would be penalized for that violation with the suspension of his operating privilege. Therefore, common pleas properly reinstated the suspension of Licensee's operating privilege.

## I.     Factual and Procedural Background

DOT informed Licensee that his operating privilege was suspended for one year as a result of his failure to submit to chemical testing in violation of Section 1547(b)(1)(i) of the Vehicle Code. On May 19, 2016, Licensee appealed to common pleas pursuant to Section 1550(a) of the Vehicle Code, 75 Pa. C.S. § 1550(a).[3]

At the hearing, testimony was presented that on April 13, 2016, at 8:44 p.m., Pennsylvania State Police Trooper Erjon Mollaj (Trooper) was traveling southbound along Route 476 in Radnor Township, Delaware County, when he observed Licensee's vehicle traveling at a high rate of speed. During the ensuing traffic stop, while Trooper questioned Licensee, Trooper detected an odor of alcohol emanating from Licensee's breath and the inside of Licensee's vehicle. Trooper testified that

---

[3] Section 1550(a) provides that "[a]ny person . . . whose operating privilege has been . . . suspended . . . by [DOT] shall have the right to appeal to the court vested with jurisdiction of such appeals . . . ." 75 Pa. C.S. § 1550(a).

Licensee admitted to him that "he had a few drinks." (Reproduced Record (R.R.) at 35a.) Licensee agreed, at Trooper's request, to submit to a series of field sobriety tests, which he did not successfully complete. Trooper placed Licensee under arrest for DUI and transported him to a hospital for chemical testing of his blood. At the hospital, Trooper read verbatim to Licensee DOT Form DL-26, which stated, in relevant part, as follows:

1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.

2. I am requesting that you submit to a chemical test of blood.[4]

3. If you refuse to submit to the chemical test, **your operating privilege will be suspended** for at least 12 months . . . . In addition, if you refuse to submit to the chemical test, **and you are convicted** of violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code, then, because of your refusal, you will be subject to **more severe penalties** set forth in Section 3804(c) (relating to penalties) of the Vehicle Code. These are the same penalties that would be imposed if you were convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail and a minimum fine of $1,000.00, **up to a maximum of five years in jail and a maximum fine of $10,000**.

* * * *

(*Id.* at 90a (emphasis added).) Trooper explained the warnings to Licensee twice. Licensee **signed the form**, acknowledging that he understood the warnings, but stated, "**I'm not taking the test**." (*Id.* at 39a (emphasis added).)

Licensee testified that when Trooper warned him that if he refused chemical testing he could be imprisoned for five years and fined $10,000, Licensee "froze,

_____

[4] Trooper wrote the word "blood" into a blank space.

4

completely." (*Id.* at 67a.) Licensee further testified that he had "never had anything criminal in [his] life before this" and he "was shell-shocked." (*Id.*) Licensee testified that if he had known that there were only civil penalties for refusing chemical testing, and not also criminal penalties if he was subsequently convicted, Licensee would have submitted to the blood test.

At the conclusion of the evidence and in a brief, Licensee argued that following his arrest, the United States Supreme Court issued *Birchfield*, which precludes a state from imposing a criminal penalty for refusing to submit to a blood test required under an implied consent law. Thus, Licensee continued, when Trooper warned Licensee that he would be subject to criminal penalties if he refused a blood test, Licensee was provided with incorrect information. (R.R. at 76a; Record (R.) Item 7, Amended Memorandum of Law at 2.) Licensee noted that just days after the *Birchfield* decision, DOT amended Form DL-26 and created DOT Form DL-26B, which removed any mention of enhanced criminal penalties for refusing a blood test.[5] Since Licensee was informed that he was facing a criminal penalty, he believed that he should neither speak nor consent to a blood test. Licensee contended that his confusion was directly attributable to the incorrect information Trooper provided him. Had Licensee been correctly informed that if he refused the blood test, he was facing only a civil penalty of the loss of his operating privilege, Licensee, as he testified, would have submitted to the blood test.

Common pleas denied Licensee's appeal and reinstated DOT's suspension of Licensee's operating privilege. In its decision, common pleas rejected Licensee's reliance on *Birchfield*, concluding that it "does not apply to civil license suspension proceedings." (Common Pleas Opinion (Op.) ¶ 25.)

_____

[5] At the hearing, DOT Form DL-26B was entered into evidence. (R.R. at 59a, 85a.)

Licensee then filed a Motion for Reconsideration, arguing that common pleas "did not address the central question" Licensee raised, "which was that [Licensee] was denied due process because [Trooper] provided [Licensee] with incorrect information[.]" (R. Item 7, Motion for Reconsideration at 1-2.)

Common pleas granted the Motion for Reconsideration to the extent of holding a hearing thereon, but then denied the Motion for Reconsideration, which, in this instance, operated as confirmation of common pleas' prior Order denying Licensee's appeal. Following Licensee's filing of a Concise Statement of Errors Complained of on Appeal, common pleas issued its opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a). Common pleas noted that in *Birchfield*, the Court "did not question the constitutionality of the implied consent laws that impose only civil penalties." (Common Pleas 1925(a) Op. (1925(a) Op.) at 9, Aug. 16, 2017.) Further, citing *Boseman v. Department of Transportation, Bureau of Driver Licensing*, 157 A.3d 10, 20 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 170 A.3d 996 (Pa. 2017), common pleas noted that this Court "emphasized that a license suspension stemming from a refusal to submit to chemical testing [of blood] is a separate administrative proceeding from a criminal DUI proceeding arising out of the same incident." (1925(a) Op. at 9.) Common pleas concluded that *Birchfield* and *Boseman* controlled. (*Id.* at 12.) Based on *Birchfield* and *Boseman*, common pleas held that Licensee was not denied due process. (*Id.* at 13.) Licensee was not denied due process because: Licensee was advised of the civil penalty of the suspension of his operating privilege for refusing a blood test; Licensee knowingly and voluntarily decided not to submit to a blood test; and the civil penalty occurs in the context of a "**separate** administrative proceeding from a criminal DUI proceeding arising out of the same incident." (*Id.*

6

at 12-13 (emphasis in original) (citing *Boseman*, 157 A.3d at 20).) Accordingly, "the reading of the enhanced criminal penalties did not deny [Licensee] procedural due process in the separate civil administrative proceeding." (*Id.* at 13.)

## II. Discussion

### A. Knowing and Conscious Choice/Procedural Due Process

On appeal,[6] Licensee argues that he was deprived of his right to procedural due process of law guaranteed under the United States and Pennsylvania Constitutions[7] and the ability to make a knowing and conscious choice as to whether to submit to or to refuse chemical testing of his blood because his decision was based on information that was "partially incorrect." (Licensee's Br. at 8.) Licensee argues, based on *Birchfield*, that Trooper misinformed Licensee that he would be subject to criminal penalties if he refused a chemical test of his blood and was convicted of DUI. This misinformation alone, Licensee argues, is enough to overturn the suspension of his operating privilege, regardless of whether he relied on it. (*Id.* at 18-19 (citing *Peppelman v. Commonwealth*, 403 A.2d 1041 (Pa. Cmwlth. 1979)).) But, in this case, Licensee argues that he did rely on this misinformation in deciding not to submit to a chemical test of his blood. Licensee notes he testified that, had he known he was facing only a civil penalty of the suspension of his operating privilege

---

[6] "Our standard of review is limited to determining whether common pleas committed an error of law, whether common pleas abused its discretion, or whether the findings of fact are supported by substantial evidence." *Garlick v. Dep't of Transp., Bureau of Driver Licensing*, 176 A.3d 1030, 1035 n.6 (Pa. Cmwlth. 2018) (en banc).

[7] The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides, in relevant part, that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Due process under the Pennsylvania Constitution emanates from a number of provisions, including article I, section 11, which provides, in pertinent part, that "[a]ll courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law . . . ." Pa. Const. art. I, § 11.

7

if he refused to submit, he would have submitted to a chemical test of his blood. Licensee, in addition to distinguishing *Boseman* on the facts, argues that it does not matter that this is a civil proceeding. Due process of law, according to Licensee, still requires that when faced with having to quickly decide whether to submit to chemical testing of his blood, he be provided with correct information regarding the consequences of refusing such a test before his operating privilege could be suspended.

DOT responds that common pleas correctly reinstated the suspension of Licensee's operating privilege. DOT asserts that, at the time Trooper warned Licensee about the consequences of refusing a chemical test of his blood, which was prior to *Birchfield*, those warnings were correct as a matter of law. DOT agrees with Licensee that *Birchfield* applies to cases such as Licensee's that were pending when *Birchfield* was decided, but DOT contends that *Birchfield* does not warrant a different result. This is because, as this Court stated in *Boseman*, *Birchfield* impacts criminal DUI proceedings, not civil license suspension proceedings. In other words, DOT argues, the two proceedings are separate. DOT asserts that where the results of a blood test are involuntarily obtained, the remedy is the suppression of those results in a criminal DUI proceeding. However, here, Licensee did not submit to a blood test and, thus, there was nothing to suppress. Since Licensee was properly warned of the civil consequences of refusing a blood test, and Licensee knowingly and consciously refused the test, his operating privilege was properly suspended, DOT asserts. Therefore, DOT argues, "it makes no difference" that Licensee was warned about both civil and criminal penalties for refusing a blood test because he was properly warned that his operating privilege would be suspended if he refused the blood test, and the warnings about criminal penalties, as held in *Boseman*, have

8

no impact on the suspension of Licensee's operating privilege. (DOT's Br. at 27.) Accordingly, DOT concludes, Licensee knowingly and consciously refused a chemical test of his blood, and he was not deprived of due process of law.

Following the parties' submission of their briefs, we directed the parties to address the following questions at oral argument:

> Where a licensee suspected of driving under the influence is not given an accurate version of the warning, as required by *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873 (Pa. 1989), does the holding in *Peppelman* . . . require that the license suspension appeal be sustained? Stated otherwise, can a licensee make a knowing and conscious decision as to whether to consent to chemical testing where the warning is not legally accurate when given?

(Order, filed May 9, 2018.)

Before addressing the merits of Licensee's argument, it is helpful to our analysis to review the developments in the law before and after *Birchfield*. Prior to *Birchfield*, under former Section 1547(b)(2) of the Vehicle Code, a police officer was obligated to warn a licensee stopped on suspicion of DUI that the failure to submit to chemical testing, of either breath or blood, would result in the suspension of the licensee's operating privilege **and** subject the licensee to the imposition of enhanced criminal penalties if the licensee was convicted of the DUI. *Former* 75 Pa. C.S. § 1547(b)(2);[8] *Martinovic v. Dep't of Transp., Bureau of Driver Licensing*,

---

[8] Former Section 1547(b)(2) provided as follows:

(2) It shall be the duty of the police officer to inform the person that:
 (i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and
 (ii) upon conviction, plea or adjudication of delinquency for violating section 3802(a) [of the Vehicle Code], the person will be subject to the penalties provided in section 3804(c) [of the Vehicle Code] (relating to penalties).

*Former* 75 Pa. C.S. § 1547(b)(2).

9

881 A.2d 30, 34 (Pa. Cmwlth. 2005) (stating that in order to suspend a licensee's operating privilege under Section 1547(b)(1), DOT had to prove, *inter alia*, that a "[l]icensee was specifically warned that a refusal would result in the suspension of his operating privileges and would result in enhanced penalties if he was later convicted of violating Section 3802(a)(1)").

On June 23, 2016, the United States Supreme Court issued its decision in *Birchfield*. In *Birchfield*, the challenge was to two similar laws, one from Minnesota and the other from North Dakota, that made it a crime for a motorist suspected of DUI to refuse a breath or blood test required under those states' implied consent laws. 579 U.S. at __, 136 S. Ct. at 2170-72. The Supreme Court held, in relevant part, as follows: the search-incident-to-arrest exception to the warrant requirement justifies a warrantless search of a motorist's breath, but not his blood; implied consent under an implied consent law does not justify the warrantless search of a motorist's blood; and a state may not impose criminal penalties on a motorist for refusing a blood test requested under an implied consent law. On that latter point, the Supreme Court concluded that it is unreasonable to impose criminal penalties on a motorist who refuses "an intrusive blood test" required under an implied consent law, stating "[t]here must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads." 579 U.S. at __, 136 S. Ct. at 2185-86. This point, however, was prefaced by the Court's statement that "[o]ur prior opinions have referred **approvingly** to the general concept of implied-consent laws that **impose civil penalties** and evidentiary consequences on motorists who refuse to comply . . . . Petitioners do not question the constitutionality of those laws, and **nothing we say here should be read to cast**

10

**doubt on them**." 579 U.S. at __, 136 S. Ct. at 2185 (emphasis added; citations omitted).

Only a week after the Supreme Court decided *Birchfield*, at the request of the Pennsylvania District Attorneys Association and a number of county district attorneys, DOT amended DOT Form DL-26, "creating one for breath tests and one for blood tests, the latter of which is now Form DL-26B." *Garlick v. Dep't of Transp., Bureau of Driver Licensing*, 176 A.3d 1030, 1032-33 (Pa. Cmwlth. 2018) (en banc). The amendment was prompted by the concern of these district attorneys that warning licensees about enhanced criminal penalties for refusing a blood test, if they were convicted of DUI, while still required by Section 1547(b)(2),[9] would result in the suppression of blood test results in criminal proceedings. In fact, as the district attorneys anticipated, the Superior Court later held that when a licensee is warned about criminal penalties for refusing a chemical test of his blood, that "warning is '**partially inaccurate**.'" *Id.* at 1033 (citing *Commonwealth v. Evans*, 153 A.3d 323, 331 (Pa. Super. 2016)). As a result, "an enhanced sentence for refusing the blood test must be vacated." *Id.* (citing *Commonwealth v. Giron*, 155 A.3d 635, 640 (Pa. Super. 2017)). In addition, "the results of the blood test must be suppressed," if consent, based on the totality of circumstances, including the partially inaccurate warning, is lacking. *Id.* (citing *Evans*, 153 A.3d at 331).

In July 2017, the General Assembly amended Sections 1547(b)(2)(ii) and 3804(c) of the Vehicle Code, consistent with the holding in *Birchfield*, to clarify that enhanced criminal penalties could be imposed for refusing to submit to "'chemical

---

[9] We held in *Garlick* that the failure to warn the licensee about the unconstitutional criminal penalties still contained in Section 1547(b)(2)(ii) at the time of his arrest did not render the civil suspension of his operating privilege improper. 176 A.3d at 1037.

11

**breath** testing,' not blood testing." *Garlick*, 176 A.3d at 1033 (emphasis in original) (citing Section 4 of the Act of July 20, 2017, P.L. 333).[10] Therefore, under the Implied Consent Law, a licensee is no longer subject to enhanced criminal penalties for refusing a chemical test of his blood if he is convicted of DUI, and, concomitantly, an officer has no obligation to warn a licensee of enhanced criminal penalties for refusing a blood test. *Id.* Rather, an officer must only warn a licensee that his operating privilege will be suspended if he refuses chemical testing of his blood.[11]

With that background, as Licensee explained at oral argument, he is relying on *Birchfield* as a "bridge" to *Evans* to show that the warning he received was "partially inaccurate," which, regardless of whether Licensee actually relied on the warning, rendered his refusal not knowing and conscious. We are not persuaded by Licensee's argument for the following reasons, which we detail below. First, the warning Licensee received was accurate when given. Second, even if the warning was subsequently rendered inaccurate by the change in the law brought about by *Birchfield*, Licensee's refusal was still knowing and conscious because he was warned that his operating privilege would be suspended if he refused chemical testing. Third, while Licensee claimed at the hearing that the warning about enhanced criminal penalties left him "shell-shocked" or "frozen," the factual record

---

[10] Enhanced criminal penalties upon conviction may also be imposed if a licensee refuses a request for testing of blood "pursuant to a valid search warrant." 75 Pa. C.S. § 3804(c).

[11] Although not at issue in this case, we note that DOT, in addition to proving that a licensee was specifically warned that a refusal of a request for chemical testing of blood would result in suspension of his operating privilege, must prove that the police officer who arrested the licensee on suspicion of DUI "had reasonable grounds to believe that the licensee was operating or was in actual physical control of the movement of the vehicle while under the influence of alcohol," that the officer requested that the licensee submit to chemical testing of his blood, and that the licensee refused the officer's request. *Kollar v. Dep't of Transp., Bureau of Driver Licensing*, 7 A.3d 336, 339 (Pa. Cmwlth. 2010).

12

does not support any claim that this prevented him from knowingly and consciously refusing chemical testing.

We begin with the knowing and conscious standard, which "is not explicitly found in Section 1547." *Yourick v. Dep't of Transp., Bureau of Driver Licensing*, 965 A.2d 341, 345 (Pa. Cmwlth. 2009). We have, therefore, held that the knowing and conscious standard "must be strictly construed as it creates exceptions to the clear language and policy of the implied consent law." *Id.* (citation omitted). Further, the licensee bears the burden of proving that his refusal was not knowing or conscious. *Id.* at 344.

First, it is true, as Licensee argues and DOT concedes, that the retroactive application of *Birchfield* renders the portion of the warnings read to Licensee about enhanced criminal penalties inaccurate. (Licensee's Br. at 8; DOT's Br. at 9.) However, as the parties also agree, when that warning was given to Licensee, prior to *Birchfield*, it was accurate as a matter of law. (Licensee's Br. at 19; DOT's Br. at 9.) Whether a refusal was knowing and conscious must be judged at the time of the warning and refusal. *See Lanthier v. Dep't of Transp., Bureau of Driver Licensing*, 22 A.3d 346, 351-52 (Pa. Cmwlth. 2011) (stating that "[w]hether . . . a license[e] was **actually** conscious and listening **at the time** a request was made goes to whether a licensee was capable of making a conscious and knowing refusal") (second emphasis added); *Dep't of Transp., Bureau of Traffic Safety v. Day*, 500 A.2d 214, 214 (Pa. Cmwlth. 1985) (stating that when considering whether a refusal was knowing and conscious, "[o]ne of the most important [factors] is the driver's mental and physical state **at the time**") (emphasis added). Indeed, it would be speculative for a licensee to argue, and a court to conclude, that a refusal, which is a fact-intensive inquiry, was not knowing and conscious because of a change in the law

13

that occurred after the refusal itself. Such a subsequent change in the law necessarily could not have played any part in a licensee's decision whether to refuse chemical testing.

Contrary to Licensee's contention, this holding does not deny him the benefit of the decision in *Birchfield*, to which he is entitled because his appeal was pending at the time *Birchfield* was decided. *Kituskie v. Corbman*, 714 A.2d 1027, 1030 n.5 (Pa. 1998). *Birchfield* held that a motorist cannot be **criminally** penalized for refusing a blood test requested under an implied consent law. Licensee, however, was not criminally penalized for refusing the blood test. *Birchfield*, 579 U.S. at __, 136 S. Ct. at 2186 (reversing judgment of conviction where petitioner Birchfield was threatened with an unlawful search).[12] *Birchfield* further held that when the results of a blood test are obtained based on a threat that the motorist will be criminally penalized for refusing, the voluntariness of the motorist's consent, both in any criminal prosecution or civil license suspension proceeding, must be evaluated based on the totality of the circumstances, taking into account the fact that the motorist was given partially inaccurate advice. *Id.* (where motorist submitted to blood test on pain of criminal prosecution and his license was then suspended as a result of the high level of concentration of alcohol in his blood, the matter was remanded to state court to determine whether motorist's consent to the test was voluntary under the totality of the circumstances, including the fact his consent followed a partially inaccurate warning); *see Commonwealth v. Neysmith*, __ A.3d __, __, (Pa. Super., No. 1584 MDA 2017, filed June 28, 2018), slip op. at 5-7 (affirming denial of the suppression of blood test results based on defendant having voluntarily consented, given the

---

[12] Upon remand, the North Dakota Supreme Court vacated petitioner Birchfield's conviction for refusing to submit to a chemical test and directed the trial court to dismiss the charge with prejudice.

14

totality of the circumstances, even though he was inaccurately warned that he would be facing enhanced criminal penalties for refusing).  However, here, upon Licensee's refusal, no blood test was conducted, and thus no results were obtained, because Licensee was not coerced into agreeing to the test.  Therefore, Licensee's rights, under *Birchfield*, have not been violated.

Second, even if the warning was accurate when given but was rendered inaccurate based on a subsequent change in the law, this did not render his refusal unknowing or unconscious.  Licensee reads cases such as *Peppelman* too broadly to suggest that **any** inaccuracy in the warning requires that a suspension of a licensee's operating privilege be rescinded.

In *Peppelman*, the licensee was told that he "**could**" lose his license if he refused the requested blood test, and not, as required by Section 1547(b)(2), that his license "**will**" be suspended.  403 A.2d at 1042 (emphasis added).  We took a "strict approach with respect to language imposing a duty upon the police officer to inform the motorist that his license will be suspended or revoked if he refuses to take the test."  *Id*. at 1043.  As a matter of "fairness," we stated, the licensee was "entitled [to] prior warning of the consequence of refusing the test."  *Id.*  We rejected the Commonwealth's argument that the inaccuracy of the warning should be overlooked because the licensee did not rely on it.  *Id.*

Then, in *Department of Transportation, Bureau of Driver Licensing v. Osborne*, 580 A.2d 914 (Pa. Cmwlth. 1990), upon which Licensee also relies, we again stated that an error in the warning given to the licensee required that the suspension of his operating privilege be rescinded because the error prevented the licensee from making a knowing and conscious refusal.  There, although the officer correctly warned the licensee that if he refused chemical testing, his operating

15

privilege would be suspended, the officer also told the licensee that there was a special work permit available to the licensee that would allow him to drive to and from work during his suspension. *Id.* at 915. This information was inaccurate. Indeed, the officer's warning "**effectively related that there would be no suspension**." *Id.* at 916 (emphasis added). We rejected DOT's claim that this misinformation was harmless. *Id.* To the contrary, this misinformation prevented the licensee "from making a knowing and conscious refusal." *Id.*

We have not read *Peppelman* and *Osborne* to require that any error in the warning will render the refusal as not knowing and conscious, and, instead, have concluded in other cases that not every error has this effect. For example, in *Department of Transportation, Bureau of Traffic Safety v. March*, 515 A.2d 661 (Pa. Cmwlth. 1986), the officer erroneously informed the licensee that refusing to submit to a breath test would result in a six-month suspension of his operating privilege when, in fact, a recent change in the law had increased the suspension to one year. Distinguishing *Peppelman*, we held that the officer's statement about the length of the suspension he was facing was an "extraneous statement" that did not invalidate the accurate warning he received "that his failure to submit to a test would result in a suspension of his license." *Id.* at 663; *see also Dep't of Transp., Bureau of Driver Licensing v. Olenick*, 540 A.2d 993, 994-95 (Pa. Cmwlth. 1988) (where the officer misstated that licensee's operating privilege would be suspended only for six months instead of one year, this error was "harmless" and did "not negate the validity of a warning because an officer is not required to state the length of suspension"); *accord Kennedy v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 2308

16

C.D. 2012, filed May 24, 2013), slip op. at 8 (relying on *Olenick* in holding that warning was accurate).[13]

More recently, in *Alexander v. Department of Transportation, Bureau of Driver Licensing*, 885 A.2d 651 (Pa. Cmwlth. 2005), we were presented with a question similar to the one here: whether a warning, which includes enhanced criminal penalties which are unlawful, renders the licensee's refusal of chemical testing unknowing and unconscious. We concluded that it did not. In that case, Section 1547(b)(2) provided that enhanced criminal penalties, including imprisonment and a $1000 fine, could be imposed on a juvenile who refused chemical testing and was later adjudicated delinquent for DUI. The licensee was 17 years old at the time of the traffic stop and, thus, a juvenile. However, a juvenile could not be subject to enhanced criminal penalties for a summary offense, *id.* at 655 (Kelley, J., dissenting[14]), and, by the time the licensee's appeal was before us, the General Assembly had amended Section 1547(b)(2). The licensee in that case argued that he was misinformed about the penalties for refusing the chemical test and thus could not make a knowing and conscious decision. We concluded that this misinformation did not render the licensee's refusal unknowing. Quoting from our decision in *Weaver v. Department of Transportation, Bureau of Driver Licensing*,

---

[13] *Kennedy* is cited "for its persuasive value" in accordance with Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a).

[14] We note that the dissent's disagreement was based on the licensee being a minor.

> It may be sufficient to conclude that all that is necessary in order to satisfy the requirements of Section 1547(b)(2) of the Vehicle Code in the case of an adult is for the police to inform a motorist that he or she will be in violation of the law and will be penalized for that violation if he or she should fail to accede to the officer's request for a chemical test. But . . . it is not sufficient to make the same conclusion in the case of a minor.

*Alexander*, 885 A.2d at 655.

17

873 A.2d 1, 2 (Pa. Cmwlth. 2005), *aff'd*, 912 A.2d 259 (Pa. 2006), we stated that "[i]t is sufficient for the police to inform a motorist that he or she will be in violation of the law and will be penalized for that violation if he or she should fail to accede to the officer's request for a chemical test." *Alexander*, 885 A.2d at 653. The licensee, we stated, "was aware that if he refused to submit to the chemical test, he would be in violation of the law[,]" and yet "[h]e still refused[.]" *Id.* As such, his refusal had to "be deemed a denial to submit to a request for a chemical test." *Id.*

When we read *Peppelman* and *Osborne* in light of *March, Alexander*, and *Weaver,* we see that not every inaccuracy in a warning will render a refusal unknowing. In *Peppelman* and *Osborne*, where the officer's warning made it appear that there would either be **no** consequence or might not be any consequence for refusing, then the refusal was not knowing and conscious. However, where the officer's warning informed the licensee that there would be a civil consequence of the loss of operating privilege for refusing, the licensee's refusal will still be considered knowing and conscious even if the warning includes an enhanced criminal penalty that is more severe than required by law, as in *Alexander.* This Court has found it is "legally sufficient" if the officer "informs the licensee that refusing a request for chemical testing means that he/she 'will be in violation of the law and will be penalized for that violation.'" *Yourick*, 965 A.2d at 345 (quoting *Weaver*, 873 A.2d at 2).

We therefore find that Licensee's refusal, here, was knowing and conscious. Trooper told Licensee that if he refused chemical testing, his operating privilege would be suspended for one year. Despite this knowledge, Licensee still refused chemical testing. In other words, Licensee refused chemical testing with full knowledge that his refusal would result in a penalty, which was the suspension of

18

his operating privilege. That the warning also included an enhanced criminal penalty that was more severe than ultimately would be required by law if he was convicted of DUI, as in *Alexander*, did not render the warning insufficient.

While Licensee also cites to *O'Connell* and *Binder v. Commonwealth*, 513 A.2d 1105 (Pa. Cmwlth. 1986), in support of his argument, they do not compel a different result. *Binder* and *O'Connell* are both distinguishable. In *Binder*, the officer told the licensee that, if he preferred, he could take a blood test instead of a breath test. 513 A.2d at 1106. According to the licensee, but not the officer, the licensee told the officer he preferred a blood test. Citing *Peppelman*, we noted that "a licensee is statutorily entitled to a warning that refusal to submit to a test will result in the licensee's suspension," that "the duty to administer the warning includes a duty to do so accurately," and that "a licensee need not rely on the inaccurate warning." *Id.* at 1107. Based on *Peppelman*, we held that, because a licensee has no right to a choice of tests, the warning was inaccurate, and that "this fact alone," without any reliance on the part of the licensee, required that the suspension be set aside. *Id.* Although, as Licensee notes, *Binder* supports the general proposition that a licensee is entitled to an accurate warning and that the licensee need not rely on the inaccurate warning, *Binder* specifically relates to the manner in which a licensee refuses a chemical test, not the consequences of refusing. If, as in *Binder*, the licensee is told that he has the option of a breath test or a blood test and he opts for the latter, he has not knowingly **refused** chemical testing. Here, however, we are not concerned with the manner in which Licensee refused – he undisputedly refused a blood test – rather, we are concerned with the impact of a statement about the consequences of refusing chemical testing. Thus, *Binder* is distinguishable.

*O'Connell* is also distinguishable. There, following the licensee's arrest for DUI, he was twice advised of his *Miranda*[15] rights, at the scene and at the police station, and he indicated that he wanted to speak with an attorney. 555 A.2d at 874. Then, the officer asked the licensee to take a breath test, which, according to the credited testimony, the licensee refused because the officer would not permit the licensee to speak with his attorney. *Id.* at 874-75. The licensee claimed this refusal was not knowing "because he was misled into believing that he was entitled to confer with an attorney prior to deciding to take the test." *Id.* at 876. Our Supreme Court held that the licensee was entitled to be told that *Miranda* rights "are inapplicable" to a chemical test and that he "does not have the right to consult with an attorney or anyone else prior to taking the test." *Id.* at 878. The Supreme Court reasoned that the licensee was entitled to this information so that he could make a "knowing and conscious" decision. *Id.* Further, the Supreme Court stated, it was appropriate to place the duty on the officer to clarify "the extent of the right to counsel" when requesting that the licensee take a chemical test because it was the police's "course of conduct" that "creat[ed] the confusion in these cases." *Id.* *O'Connell* is distinguishable from the instant matter because in *O'Connell* the warnings were inherently contradictory. The *Miranda* warning the licensee in *O'Connell* was given was that he had the right to remain silent and to speak with an attorney prior to any police questioning, but then that was followed by the officer asking the licensee if he would take a chemical test. Thus, the warnings were contradictory and, as *O'Connell* held, had to be clarified by the officer advising the licensee that there is no right to consult with an attorney prior to taking the chemical test. *See Dep't of Transp., Bureau of Driver Licensing v. Scott*, 684 A.2d 539, 544 (Pa. 1996)

---

[15] *Miranda v. Arizona*, 384 U.S. 436 (1966).

(explaining *O'Connell*, that once a motorist is informed of his *Miranda* rights, he "may reasonably assume he has the right to consult with an attorney before the chemical testing, or to refuse to submit to the testing as an exercise of his right to remain silent"). Here, however, there was nothing contradictory about the warnings Licensee was given. Indeed, as we have outlined, the warnings were accurate as a matter of law at the time they were given and only became inaccurate after the change in the law brought about by *Birchfield*.

In short, Licensee has not shown that his refusal was unknowing or, stated differently, that *Peppelman* **requires** that his appeal be sustained. Unlike in *Peppelman* and *Osborne*, Licensee was told that there would be a consequence for refusing chemical testing, that his operating privilege would be suspended, and, unlike in *O'Connell*, there was nothing inherently contradictory about the warnings Licensee received.

Third, while Licensee claims that the warning about enhanced criminal penalties left him "froze[n]" and "shell-shocked," which is to suggest that his fear left him unable to make a knowing and conscious refusal, (R.R. at 67a; Licensee's Br. at 16), other facts in the record undermine his claim. Although Licensee testified he was "froze[n]" and "shell-shocked," he was still able to sign his name to the DL-26 Form and tell Trooper, "I'm not taking the test." (R.R. at 39a, 67a.) Licensee never told Trooper that he was unable to understand the warnings, and he did not remain silent, which would better support any claim that he was "froze[n]."[16] Even then, any subjective misunderstanding on Licensee's part would not suffice to render his refusal not knowing and conscious. *Yourick*, 965 A.2d at 345 (stating that subjective misunderstandings do not make a refusal not knowing or conscious). In

---

[16] Licensee states in his brief that upon hearing the warning, "he believed that he should not speak or consent to give blood," but Licensee did speak. (Licensee's Br. at 6.)

short, the factual record does not support Licensee's claim that his fear about the potential for receiving enhanced criminal penalties for refusing chemical testing if he was convicted of DUI prevented him from making a knowing and conscious refusal. *Renfroe v. Dep't of Transp., Bureau of Driver Licensing*, 179 A.3d 644, 650 (Pa. Cmwlth. 2018) (holding that where the licensee testified that he could not take a blood test because he feared needles, the factual record did not support his claim on appeal that he was "forced to choose between asserting his Fourth Amendment right and maintaining his operating privilege"); *Quigley v. Dep't of Transp., Bureau of Driver Licensing*, 965 A.2d 349, 354 (Pa. Cmwlth. 2009) (where the licensee claimed that the warnings were ambiguous, we noted that the licensee never told the officer that she thought the warning advised her that her operating privilege would be suspended only if she had prior refusals or convictions; rather, the only reason she gave for not complying was that she wanted to call her husband first).

Finally, for these same reasons, we must also reject Licensee's due process argument.[17] Licensee's claim is that procedural due process required that he be given an accurate warning before having to make a decision that would result in the suspension of his operating privilege if he refused chemical testing. Licensee, however, received all the procedural process he was due. As we have discussed at length, the warning was accurate when given to Licensee, and his refusal was knowing because Trooper told him that he would be penalized if he refused chemical testing. Licensee can hardly complain that it is fundamentally unfair for the

---

[17] Typically, a procedural due process claim is couched in terms of notice and an opportunity to be heard. Licensee couches his claim more generally, asserting that the procedure followed in this case – misinforming Licensee about the consequences of refusing – was fundamentally unfair.

22

Commonwealth to impose on him the very consequence it warned him would be imposed if he refused.

While Licensee points to the concurring opinions in *Price v. Department of Transportation, Bureau of Driver Licensing* (Pa. Cmwlth., No. 1873 C.D. 2016, filed September 29, 2017), and *Gray v. Department of Transportation, Bureau of Driver Licensing* (Pa. Cmwlth., Nos. 1759 C.D. 2016, 1760 C.D. 2016, filed June 9, 2017), *petition for allowance of appeal denied*, 181 A.3d 1072 (Pa. 2018), as supporting his procedural due process argument, they do not. In both *Price* and *Gray*, the licensees were warned that they would be subject to enhanced criminal penalties if they refused. In both cases, we rejected the licensees' arguments that *Birchfield* applied to their respective license suspension appeals. *Price*, slip op. at 8 ("*Birchfield* is inapposite"); *Gray*, slip op. at 13 (concluding that *Boseman*, which stated that the holding of *Birchfield* "was irrelevant to a civil license suspension," was "dispositive"). In a concurring opinion in both cases, the concurring judge, although constrained by *Boseman*, argued that a licensee has a constitutional right to refuse a warrantless blood test when threatened with criminal punishment and that to punish a licensee for exercising that constitutional right by suspending her operating privilege violates the Pennsylvania Constitution. *Price*, slip op. at 2 (McCullough, J., concurring); *Gray*, slip op. at 4-5 (McCullough, J., concurring). In reaching that conclusion, the concurring judge stated, "'[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort.'" *Gray*, slip op. at 5 (quoting *United States v. Goodwin*, 457 U.S. 368, 372 (1982)). Licensee highlights this language from *Gray*, (Licensee's Br. at 17), but he does not make any connection between that language and the argument he advances here. Licensee does not make the argument that the concurring judge in *Price* and

23

*Gray* found persuasive. Thus, *Price* and *Gray* are distinguishable because they involved a different legal argument, and Licensee fails to analogize *Price* and *Gray* to this matter so as to sway us that the concurring opinions in those matters should be applied here.

## B. Coercion

Licensee also argues that Trooper's "improperly coercive threat of enhancement of criminal penalties caused [Licensee] to . . . refuse the test." (Licensee's Br. at 16.)

Although it bears highlighting that Licensee was not, in fact, "coerced" since he refused chemical testing, this claim, in any event, amounts to another argument that we should extend *Birchfield* to civil license suspension proceedings. We have already rejected such a claim several times. For example, in *Boseman*, the licensee argued that, under *Birchfield* and the Fourth Amendment to the United States Constitution,[18] her operating privilege should be reinstated because the arresting officer lacked either a warrant or exigent circumstances that would have justified the taking of her blood. 157 A.3d at 19. We rejected the licensee's argument. "We emphasize[d] that a license suspension stemming from a refusal to submit to chemical testing is a separate administrative proceeding from a criminal DUI proceeding arising out of the same incident." *Id.* at 20. Further, we noted, *Birchfield* "[b]y its own language . . . does not apply to implied consent laws that merely impose civil penalties." *Id.* at 21. Therefore, because "the present case involve[d] a civil license suspension appeal, not a criminal proceeding," and because "*Birchfield*

---

[18] The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV.

24

addressed the constitutionality of a State statute that made it a **crime** to refuse a warrantless blood test after being arrested for DUI," *Birchfield*, we held, did not apply. *Id.* (emphasis in original). *Birchfield*, we noted, might "have some impact in criminal DUI proceedings in Pennsylvania where enhanced penalties based on refusal of a blood test are imposed," but that was not the case in *Boseman*, *id.*, nor is it the case here.

In *Marchese v. Department of Transportation, Bureau of Driver Licensing*, 169 A.3d 733 (Pa. Cmwlth. 2017), *petition for allowance of appeal denied*, 182 A.3d 442 (Pa. 2018), a permutation of *Boseman*, the licensee argued that Section 1547(a) and (b) violated the Fourth Amendment to the United States Constitution because it required a licensee to submit to a warrantless request for a blood draw on pain of having his operating privilege suspended. Again, the licensee's argument was premised on the holding in *Birchfield*. *Id.* at 737. We rejected the licensee's attempt "to extend the scope of the holding in *Birchfield*." *Id.* at 738. We reiterated that the holding in *Birchfield* was limited "to implied consent laws imposing criminal penalties." *Id.* at 739-40. We went on to reject the licensee's argument based on the Fourth Amendment, noting that "license suspensions are civil, not criminal proceedings," that the Fourth Amendment's exclusionary rule does not apply outside criminal trials, and that the continuation of the privilege to operate a motor vehicle on the roads of this Commonwealth is reasonably conditioned on the requirement that the licensee submit to a warrantless blood test when suspected of DUI. *Id.* at 740-42. Therefore, Section 1547(a) and (b) did not violate the Fourth Amendment.

Most recently, in *Renfroe*, an en banc panel of this Court considered a set of circumstances similar to those here. There, the arresting officer requested that the licensee submit to a chemical test of his blood, warning him that if he refused his

operating privilege would be suspended and he would be subjected to enhanced criminal penalties if he was criminally convicted of DUI. 179 A.3d at 646-47. The licensee argued "that *Birchfield* should be extended to civil license suspensions because a licensee cannot be punished, either civilly or criminally, for refusing to submit to a blood test." *Id.* at 648. We, however, again declined to extend *Birchfield* to civil license suspension proceedings. *Id.* at 650-51 (citing *Marchese*, 169 A.3d at 739-40; *Boseman*, 157 A.3d at 21). Reviewing our decision in *Boseman*, we stated that its holding was "grounded upon the settled distinction between a civil license suspension proceeding and a criminal DUI proceeding arising out of the same incident." *Id.* at 650. Therefore, we concluded in *Renfroe*, "[c]onsistent with our decisions in *Boseman* and *Marchese*," common pleas "did not err by holding that *Birchfield* does not apply to civil license suspensions." *Id.* at 651.

We reiterate here again that *Birchfield* does not apply to civil license suspension proceedings. Thus, any claim that the warnings given to Licensee were coercive – even though Licensee was not coerced by the warnings since he refused chemical testing – would have to fail.

## III. Conclusion

Common pleas properly denied Licensee's statutory appeal. Trooper provided Licensee with a warning that was accurate at the time it was given, telling him that if he refused chemical testing of his blood, his operating privilege would be suspended. While Trooper also warned Licensee that he would be subject to enhanced criminal penalties if he refused and was subsequently convicted of DUI, this warning, rendered retroactively inaccurate by the change in the law brought about by *Birchfield*, did not make Licensee's refusal not knowing and conscious nor

26

deprive Licensee of procedural due process. Licensee knew that he would be in violation of the law if he refused chemical testing and that he would be penalized for that violation by the suspension of his operating privilege, because Trooper conveyed this information to him. Yet, Licensee still refused chemical testing. While Licensee claims that the warning about enhanced criminal penalties left him "froze[n]" and "shell-shocked," other facts in the record belie these claims. (R.R. at 67a.) Moreover, Licensee's claim that the warning was coercive and that *Birchfield* should be extended to civil license suspension proceedings is one which we have rejected several times already. Therefore, we must affirm common pleas' Order refusing to rescind DOT's one-year suspension of Licensee's operating privilege.

_____
**RENÉE COHN JUBELIRER,** Judge

27

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Wayne Patane,
               Appellant

        v.

Commonwealth of Pennsylvania,
Department of Transportation,
Bureau of Driver Licensing

:
:
:
:
:   No. 973 C.D. 2017
:
:
:
:

# **O R D E R**

    **NOW**, August 9, 2018, the Order of the Court of Common Pleas of Delaware County, dated June 27, 2017, is **AFFIRMED**.

 

 

                                    _____

                                    **RENÉE COHN JUBELIRER,** Judge