IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Adam Renfroe, Jr.,      :
     Appellant    :
              :
   v.          : No. 1907 C.D. 2016
              : Argued:  October 18, 2017
Commonwealth of Pennsylvania,  :
Department of Transportation,   :
Bureau of Driver Licensing    :


BEFORE:  HONORABLE MARY HANNAH LEAVITT, President Judge
     HONORABLE RENÉE COHN JUBELIRER, Judge
     HONORABLE ROBERT SIMPSON, Judge
     HONORABLE P. KEVIN BROBSON, Judge
     HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE ANNE E. COVEY, Judge
     HONORABLE MICHAEL H. WOJCIK, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT     FILED: February 15, 2018

   Adam Renfroe, Jr., (Licensee) appeals an order of the Court of Common Pleas of Montgomery County (trial court) denying his license suspension appeal and reinstating the Department of Transportation's (Department) one-year suspension of his operating privilege under Section 1547 of the Vehicle Code (Implied Consent Law), 75 Pa. C.S. §1547.[1]  For the following reasons, we affirm.

---

[1] Section 1547 of the Vehicle Code is commonly referred to as the Implied Consent Law.  It states, in relevant part:

 (b) Suspension for refusal. –

   (1) If any person placed under arrest for a violation of section 3802 [relating to driving under the influence of alcohol or controlled substance] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

On November 12, 2014, Licensee was arrested for driving under the influence of alcohol (DUI) pursuant to Section 3802(a)(1) of the Vehicle Code, 75 Pa. C.S. §3802(a)(1).[2] On November 28, 2014, the Department notified Licensee that his operating privilege would be suspended for a period of one year, effective January 2, 2015. The notice explained that the suspension resulted from his refusal to submit to chemical testing following the arrest, in violation of the Implied Consent Law. 75 Pa. C.S. §1547(b). Licensee appealed, contending that "[he] did not refuse to submit to chemical testing." Certified Record (C.R.), Petition for Appeal (12/23/2014), ¶5. The trial court held a *de novo* hearing on August 1, 2016.

The Department presented the testimony of Pennsylvania State Trooper Derrick Cargill. He testified that on November 12, 2014, while on patrol, he observed a black Nissan Maxima fail to stop at a red light. Notes of Testimony, 8/1/2016, at 6 (N.T. __). Cargill followed the vehicle as it travelled at a high rate of speed and crossed over the yellow dividing lines. After stopping the vehicle, Cargill confronted Licensee, whose breath was marked by "the strong odor of an alcoholic beverage." N.T. 8. Licensee stated that he had one drink. Cargill conducted three field sobriety tests, all of which Licensee failed. Cargill also administered a portable breath test, which "showed a high presence of alcohol." N.T. 10.

---

(i) Except as set forth in subparagraph (ii), for a
period of 12 months.

75 Pa. C.S. §1547(b)(1)(i).

[2] It states in pertinent part:

An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa. C.S. §3802(a)(1).

2

Cargill arrested Licensee for DUI and transported him to Einstein Hospital for a blood test. Once there, Cargill read the Department's DL-26 form to Licensee, which contained the following warnings:

> If you refuse to submit to the chemical test, your operating privilege will be suspended for at least 12 months.

> * * *

> If you previously refused a chemical test or were previously convicted of driving under the influence, you will be suspended for up to 18 months.

> * * *

> In addition, if you refuse to submit to the chemical test and you are convicted of violating Section 3802(a) relating to impaired driving of the Vehicle Code, then because of your refusal, you will be subject to more severe penalties set forth in Section 3804(c) relating to penalties of the Vehicle Code.

> * * *

> These are the same penalties that will be imposed if you are convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail and a minimum fine of $1,000 or up to a maximum five years in jail and a maximum fine of $10,000.

N.T. 15-18. Licensee confirmed that he understood the consequences and signed the DL-26 form. Cargill testified that Licensee refused to take the blood test without giving a reason. Cargill further testified that Licensee did not inform him that he has a medical condition that prevents him from taking the blood test.

Licensee testified that after being read the DL-26 form, he told Cargill that he could not take a blood test because he "[had] a phobia for needles." N.T. 35. He offered to "take a urinalysis" or a breathalyzer test, but Cargill insisted upon a

3

blood test. *Id.* The only test to which Licensee submitted was the portable breath test at the initial traffic stop.

Licensee presented the testimony of his physician, Dr. Wayne Gibbons, who has treated Licensee on several occasions. Dr. Gibbons testified that Licensee often had a "vasovagal reaction" to having blood drawn, meaning that he felt faint or broke out in a sweat. N.T. 28-29. On one occasion, Licensee fainted. As a result, Dr. Gibbons uses alternative methods for laboratory testing.

Licensee argued that the United States Supreme Court's decision in *Birchfield v. North Dakota*, __U.S.__, 136 S. Ct. 2160 (2016), which was rendered during the pendency of his license suspension appeal, governs the instant matter. Under *Birchfield*, Licensee argued, his refusal to take the blood test "[was] not improper" because a motorist cannot be deemed to have consented to submit to a blood test "on pain of committing a criminal offense." N.T. 41. Here, Licensee was warned that he could be subject to both civil and criminal penalties if he refused to take the blood test.

Crediting Cargill's version of the event, the trial court denied Licensee's appeal. In its opinion filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), the trial court explained that the Department satisfied its burden under Section 1547 of the Vehicle Code in proving that Licensee (1) was arrested for DUI by a police officer who had reasonable grounds to believe he was under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that the refusal would result in a license suspension. Once the Department satisfied its burden, Licensee had to prove that his refusal was not knowing or conscious or that he was physically unable to take the test. Trial Court op. at 5 (citing *Sitoski v. Department of Transportation*, *Bureau of Driver Licensing*,

4

11 A.3d 12, 18 (Pa. Cmwlth. 2010)).  Based on Cargill's credited testimony, the trial court found that Licensee refused to take the blood test and did not explain the reason for his refusal.

The trial court rejected Licensee's argument that *Birchfield* required his license suspension to be set aside.  The trial court explained that *Birchfield* does not govern civil license suspensions, noting that the Supreme Court referred approvingly to state implied consent laws that "impose civil penalties and evidentiary consequences on motorists who refuse to comply [with chemical testing]."  Trial Court op. at 6 (citing *Birchfield*, __U.S. at __, 136 S. Ct. at 2185).  Licensee appealed to this Court.

On appeal,[3] Licensee presents two issues for our consideration.  First, he argues that the trial court erred in holding that *Birchfield* does not govern the instant matter.  He contends that *Birchfield* should be extended to civil license suspensions because a licensee cannot be punished, either civilly or criminally, for refusing to submit to a blood test.  Second, Licensee argues that the trial court abused its discretion in finding Cargill's testimony more credible than that of Licensee.

We begin with a review of the Implied Consent Law.  It is well settled in Pennsylvania that driving is a privilege, not a property right.  *Marchese v. Commonwealth*, 169 A.3d 733, 740 (Pa. Cmwlth. 2017) (citing *Plowman v. Department of Transportation, Bureau of Driver Licensing*, 635 A.2d 124 (Pa. 1993)).  To obtain the benefit of such a privilege, a driver must abide by the laws of

---

[3] Our review is to determine whether the factual findings of the trial court are supported by competent evidence and whether the trial court committed an error of law or abused its discretion. *Banner v. Department of Transportation, Bureau of Driver Licensing*, 737 A.2d 1203, 1205 (Pa. 1999).

5

the Commonwealth relating to the privilege. *Marchese*, 169 A.3d at 740. Section 1547(a) of the Vehicle Code provides in relevant part:

> (a) General rule.--*Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance* if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:
>
>> (1) in violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance)….

75 Pa. C.S. §1547(a) (emphasis added). When a licensee refuses to submit to chemical testing, "the testing shall not be conducted but upon notice by the police officer, the [D]epartment shall suspend the operating privilege of the person[.]" 75 Pa. C.S. §1547(b)(1).

Beginning on February 1, 2004, Section 1547(b)(2) of the Vehicle Code required a police officer to warn a licensee stopped on suspicion of DUI that a refusal to submit to a blood test would subject the licensee to a suspension of his operating privilege as well as enhanced criminal penalties. Act of September 30, 2003, P.L. 120.[4] Section 1547(b)(2) was again amended in 2004 to address the consequences

---

[4] When the General Assembly amended Section 1547(b)(2), effective on February 1, 2004, it provided as follows:

> It shall be the duty of the police officer to inform the person that:
>
> (i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and

6

of a refusal to submit to chemical testing. *See* Act of November 29, 2004, P.L. 1369. Thus, when Licensee was arrested on November 12, 2014, Section 1547(b)(2) provided as follows:

> It shall be the duty of the police officer to inform the person that: (i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and (ii) if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1) [of the Vehicle Code], the person will be subject to the penalties provided in section 3804(c) [of the Vehicle Code] (relating to penalties).

75 Pa. C.S. §1547(b)(2) (former provision).[5]

On June 23, 2016, approximately five weeks before Licensee's license suspension hearing, the United States Supreme Court issued its decision in *Birchfield,* ___ U.S. ___, 136 S. Ct. 2160. There, petitioners challenged North Dakota and Minnesota laws that imposed a criminal penalty on motorists suspected of DUI who refused to submit to a breath or blood test required under the states' implied consent laws. The motorists argued that a search warrant is needed before police can conduct either a breath test or a blood test. The Supreme Court held that a warrant is not required for a breath test because the need for testing a motorist's

---

> (ii) upon conviction, plea or adjudication of delinquency for violating Section 3802(a) [of the Vehicle Code], the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

Act of September 30, 2003, P.L. 120.

[5] Section 1547(b)(2) of the Vehicle Code now reads:

> It shall be the duty of the police officer to inform the person that (i) the person's operating privilege will be suspended upon refusal to submit to chemical testing and the person will be subject to a restoration fee of up to $2,000; and (ii) if the person refuses to submit to *chemical breath testing*, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

75 Pa. C.S. §1547(b)(2) (emphasis added).

7

level of intoxication outweighs the comparatively slight impact on the motorist's privacy interest in providing a breath sample. *Id.* at 2184. Because a blood test is "significantly more intrusive," the Supreme Court held that police cannot demand a blood test without first obtaining a search warrant. *Id.*

The Supreme Court rejected the government's argument that every motorist has legally consented to a blood test under the state's implied consent statute. The Court observed, nevertheless, that its "prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply." *Id.* at 2185. It also observed that petitioners in *Birchfield* did not question the constitutionality of implied consent laws, and nothing in its opinion "should be read to cast doubt on them." *Id.* However, the Court held that a state could not impose criminal penalties on a motorist for refusing to submit to a blood test because "[t]here must be a limit on the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads." *Id.* In short, "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Id.* at 2186.

Our Superior Court considered the scope of *Birchfield* in *Commonwealth v. Evans*, 153 A.3d 323 (Pa. Super. 2016). In that case, the arresting officer warned the driver that he would be subject to enhanced criminal penalties if he refused to consent to a blood test, and the driver consented. At his subsequent criminal trial on DUI charges, the driver moved to suppress the results of the blood test. The trial court denied the motion to suppress. The driver appealed, arguing that his consent to the warrantless request for a blood test was involuntary. The Superior Court vacated the trial court's order. It held that the warning contained in

8

the former version of Section 1547(b)(2)(ii) of the Vehicle Code (Act of November 29, 2004, P.L. 1369) was "partially inaccurate" and, consequently, the results of the blood test had to be suppressed and the enhanced sentence for refusing the blood test vacated. *Evans*, 153 A.3d at 331. *See also Commonwealth v. Giron*, 155 A.3d 635, 640 (Pa. Super. 2017) (holding that defendant could not be subject to enhanced criminal penalties for refusing officer's request for blood test under Implied Consent Law).

With that background, we turn to Licensee's first issue. He contends that because the warnings he was given contained language about enhanced criminal penalties, which was declared unconstitutional under *Birchfield* and *Evans*, he cannot be punished for refusing to take the blood test, either civilly or criminally. Licensee argues that "it is impossible [that] one must consent for civil purposes but cannot for criminal purposes." Licensee Brief at 13. Licensee describes the problem as a "Hobson's choice," *i.e.*, yield to a directive "that is so coercive as to be constitutionally infirm" or lose his license. *Id.* at 6. By failing to consider such an "inherent dilemma," Licensee argues, the trial court erred by holding that *Birchfield* does not apply to civil license suspension cases. *Id.* at 7.

Preliminarily, we observe that the basis for Licensee's license suspension appeal to the trial court was that "[he] did not refuse to submit to chemical testing." C.R., Petition for Appeal (12/23/2014), ¶5. Licensee testified that he could not take the blood test because he had a "phobia for needles." N.T. 35-36. In support, he presented the testimony of his physician, who confirmed that Licensee often felt faint or broke out in a sweat when he had blood drawn. N.T. 28-29. The factual record does not indicate that Licensee was forced to choose between asserting his Fourth Amendment right and maintaining his operating privilege.

9

Nevertheless, because Licensee raised *Birchfield* at his hearing before the trial court, we consider it here.

Licensee contends that *Birchfield* must be extended to civil license suspension cases. We disagree. The *Birchfield* court explicitly limited its holding to implied consent laws imposing criminal penalties. In so doing, the Supreme Court observed that the petitioners in *Birchfield* did not question the constitutionality of implied consent laws that impose only civil penalties, and stated that nothing in its opinion "should be read to cast doubt on them." *Birchfield*, ___ U.S. at ___, 136 S.Ct. at 2185. The Court explained that it is one thing to approve implied consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply, but quite another for a state to insist upon an intrusive blood test and then impose criminal penalties on motorists who refuse to submit. Therefore, "*[t]here must be a limit on the consequences* to which motorists may be deemed to have consented by virtue of a decision to drive on public roads." *Id*. (emphasis added).

Subsequently, in *Boseman v. Department of Transportation, Bureau of Driver Licensing*, 157 A.3d 10, 21 (Pa. Cmwlth.), *appeal denied*, 170 A.3d 996 (Pa. 2017), this Court held that *Birchfield*, which prohibits a state from criminally penalizing a motorist for refusing to submit to a warrantless request for a blood test, does not apply in a civil license suspension proceeding. Our holding in *Boseman* is grounded upon the settled distinction between a civil license suspension proceeding and a criminal DUI proceeding arising out of the same incident. Further, it is not a crime to refuse to submit to chemical testing under the Implied Consent Law.

Licensee argues that the trial court erred by relying on the Supreme Court's statement in *Birchfield* approving of the general concept of implied consent

10

laws that impose civil penalties and evidentiary consequences on motorists who refuse to submit to a blood test. Licensee asserts that this language was *obiter dicta*. We rejected a similar argument in *Marchese*, explaining as follows:

> By its own language, the *Birchfield* Court unequivocally stated that "nothing we say here should be read to cast doubt" on the constitutionality of state implied consent laws imposing civil penalties and evidentiary consequences for refusing a blood test. Contrary to Licensee's characterization of this language as *obiter dicta*, we believe the U.S. Supreme Court clearly indicated nothing in *Birchfield* questions the constitutionality of state implied consent laws imposing only civil sanctions. To that end, the Court stated: "It is another matter, however, for a State to not only insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test." Therefore, the Court concluded "that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense."
>
> Given the *Birchfield* Court's explicit limitation on its holding to implied consent laws imposing criminal penalties, we reject Licensee's contention that it must logically be extended to render unconstitutional implied consent laws which provide for only civil penalties for refusal of a blood test. Such an interpretation would be contrary to the U.S. Supreme Court's limiting language in *Birchfield*.

*Marchese*, 169 A.3d at 739-40 (emphasis and internal quotations omitted). Consistent with our decisions in *Boseman* and *Marchese*, we conclude that the trial court did not err by holding that *Birchfield* does not apply to civil license suspensions.

In his second issue, Licensee argues that the trial court abused its discretion in finding that Officer Cargill's testimony was more credible than that of Licensee. He maintains that the trial court "provided no basis for its finding and in so doing, completely ignored the testimony of Dr. Gibbons." Licensee Brief at 16.

11

Because the trial court failed to explain its credibility determination, Licensee argues, its decision was not based upon "competent evidence." *Id*. at 17.

As factfinder, the trial court is required to observe witnesses and their demeanor in order to make credibility determinations. *Pollock v. Department of Transportation, Bureau of Driver Licensing*, 634 A.2d 852, 855 (Pa. Cmwlth. 1993). The resolution of questions of evidentiary weight and conflicts in the testimony is solely in the province of the trial court. *Hasson v. Department of Transportation, Bureau of Driver Licensing*, 866 A.2d 1181, 1186 (Pa. Cmwlth. 2005). This Court explained in *Mooney v. Department of Transportation, Bureau of Driver Licensing*, 654 A.2d 47 (Pa. Cmwlth. 1994), that

> [a]s long as sufficient evidence exists in the record which is adequate to support the finding found by the trial court, as factfinder, [an appellate court is] precluded from overturning that finding and must affirm, *thereby paying the proper deference due to the factfinder who heard the witnesses testify and was in the sole position to observe the demeanor of the witnesses and assess their credibility.*

*Id*. at 50 (emphasis added) (quoting *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873, 875 (Pa. 1989)).

Here, it was undisputed that Licensee was arrested for DUI; was asked to submit to a blood test; and was read the warnings on the Form DL-26 by Officer Cargill, which included a warning that Licensee's refusal would result in the suspension of his driver's license. Cargill testified that Licensee refused to take the blood test without explaining the reason for his refusal. The trial court credited Cargill's testimony and rejected as not credible Licensee's conflicting testimony that he told Cargill he had a "phobia for needles." There is no reason for this Court to disturb the trial court's credibility determination because the trial court was "in the

12

sole position to observe the demeanor of the witnesses and assess their credibility." *Mooney*, 654 A.2d at 50. Licensee's argument is an improper attempt to assert his preferred version of the facts.

Because we discern no error in the trial court's denial of Licensee's statutory license suspension appeal, we affirm the trial court's order.

_____
MARY HANNAH LEAVITT, President Judge

Judge Brobson and Judge McCullough concur in the result only.

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Adam Renfroe, Jr.,                                    :
                 Appellant                        :
                                                         :
                 v.                                   :   No. 1907 C.D. 2016
                                                         :
Commonwealth of Pennsylvania,                         :
Department of Transportation,                         :
Bureau of Driver Licensing                            :

# **O R D E R**

AND NOW, this 15th day of February, 2018, it is hereby ORDERED that the order of the Court of Common Pleas of Montgomery County, dated August 1, 2016, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge