# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gonzalo Montanez,                                    :
                               Appellant             :
                                                     :
        v.                                           :    No. 1150 C.D. 2018
                                                     :    SUBMITTED:  May 3, 2019
Commonwealth of Pennsylvania,                        :
Department of Transportation,                        :
Bureau of Driver Licensing                           :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                     FILED:  July 10, 2019


        Gonzalo Montanez (Montanez or Driver) appeals from a decision of the Court of Common Pleas of Berks County[1] (trial court) denying his driver's license suspension appeal.  The trial court concluded Driver received timely notice of his license suspensions when they were issued in 2008 and 2010 by the Pennsylvania Department of Transportation (Department), while Driver was not licensed to operate a motor vehicle.  The trial court further concluded the Department properly effectuated the suspensions in 2017, when facial identification software revealed Driver had obtained a driver's license using a different identity.  After thorough review, we affirm.

---

[1] The Honorable J. Benjamin Nevius presided.

## I. Background

In 2006, Driver, who was then using the name Braulio D. DLeon (DLeon), received a traffic citation under 75 Pa. C.S. § 1501(a) for driving without a license. In 2008, still using the DLeon identity, Driver received a second citation for the same offense. Driver pleaded guilty to both offenses and paid the associated fines.

The second violation gave rise to a six-month suspension of his operating privilege pursuant to 75 Pa. C.S. § 1532(b)(2). The Department's records indicate a notice of suspension was mailed to Driver under the DLeon name. It is undisputed that Driver neither surrendered his driver's license (having none to surrender) nor sent the Department written acknowledgment of the suspension.[2] Accordingly, he never began receiving credit toward the suspension. It is also undisputed that Driver continued operating a motor vehicle, still without possessing a driver's license.

In 2010, continuing to identify himself as DLeon, Driver received a citation under 75 Pa. C.S. § 1543(a), relating to driving while operating privilege is suspended. As before, he pleaded guilty and paid the associated fine. That citation triggered an additional one-year suspension under 75 Pa. C.S. § 1543(c)(1). The Department's records indicate it again mailed notice of the suspension to Driver under the DLeon name. Again, Driver neither surrendered a driver's license nor sent the Department a written acknowledgment of the suspension, so he never began receiving credit toward that suspension. Once again, he continued driving despite having no license to do so.

---

[2] When an unlicensed driver incurs a suspension, the suspension does not take effect until the driver either obtains a license or submits a written acknowledgment of the suspension to the Department. *See* 75 Pa. C.S. § 1540(b)(3) (suspension effective on date determined by Department); Reproduced Record at 42-43, 45-46 (form suspension notices stating suspension does not begin to run until driver's license received by Department; driver who has no license must submit written acknowledgment of suspension).

At all times during the period from 2006 through at least 2010, Driver held an identification card issued by the Department to him in 2004 as DLeon. However, Driver never possessed a driver's license at any time prior to 2013.

Driver obtained his first driver's license in 2013, under the name of Montanez. He obtained a commercial driver's license (CDL) under the same name in 2016.

In March 2017, Driver, as Montanez, renewed his driver's license. At that time, the Department used facial recognition software to compare Driver's license photograph to others in the Department's database. Two potential matches were found – DLeon and a previous holder of a Department identification card, Alfonso Rodea (Rodea). All three identities – Montanez, DLeon, and Rodea – had different Department identification numbers, addresses, dates of birth, and Social Security numbers.

In May 2017, the Department forwarded this information to the Pennsylvania State Police for further investigation. In November 2017, after investigating and interviewing Driver, the State Police advised the Department that Montanez, DLeon, and Rodea were all identities used by Driver. The State Police recommended that the Department merge the records of all three under Montanez and cancel the identification cards issued under the DLeon and Rodea names. The Department did so. Within two days after receiving the State Police report, the Department mailed notices of the 2008 and 2010 suspensions to Driver as Montanez at the address listed on the Montanez driver's license.

Driver appealed the Department's suspensions to the trial court. In July 2018, the trial court held a hearing at which Driver testified and the Department entered exhibits. Driver testified he still lived at the same address listed under Montanez, and had lived at that address since at least 2008. He denied having used the name

Rodea. However, he admitted using the DLeon identity from at least 2004 through 2010.[3] The Department submitted copies of its records relating to DLeon and Montanez, including notations of mailing the 2008 and 2010 notices of suspension, as well as documentation concerning the State Police investigation of Montanez, DLeon, and Rodea.

Driver contended he never received the 2008 and 2010 suspension notices from the Department. He also asserted that by paying for training to obtain his CDL in 2016, and subsequently leaving his previous job for a driving position in which a CDL is required, he relied on the absence of suspensions. Consequently, he argued he would be prejudiced by the Department's late notice if the suspensions were to take effect after such a long delay. Driver also argued the Department should have used its facial recognition software to discover earlier that Montanez and DLeon were the same person. He contended the Department's delay in discovering his use of multiple identities resulted in a denial of due process by depriving him of a timely hearing on the suspensions.

The trial court denied Driver's appeal. Driver then appealed to this Court.

In its opinion pursuant to Pa. R.A.P. 1925(a), the trial court explained it credited the Department's exhibits stating that notices of the suspensions were mailed to Driver when those suspensions were imposed in 2008 and 2010. The trial court found Driver's testimony not credible, both in general and specifically with regard to his claim that he did not receive the suspension notices. The trial court pointed to evidence that the Department mailed the notices and that Driver misled

---

[3] Notably, Driver listed a different address with the Department in obtaining the DLeon identification in 2004. He was still using that identification, reflecting that address, from 2008 through at least 2010 – a period during which, according to his testimony, he was living at the address later shown on the Montanez license. He listed yet another address, for which he completed an affidavit of residency, on his 2013 application for his learner's permit.

4

the Department by using false identities. The trial court found that Driver failed to surrender his license in response to the suspension notices because he had no license to surrender. Further, the trial court concluded that Driver invented his present identity in 2013 in order to avoid his existing suspensions and obtain a license by presenting the appearance of a clean driving history. Thus, the trial court found as a fact that Driver received the 2008 and 2010 notices of the suspensions.

## II. Issue

On appeal,[4] Driver renews his arguments that he received no notice of his suspensions until 2017, and that the delay caused him prejudice and deprived him of due process.

## III. Discussion

In 2008, after Driver received his second traffic citation for driving without a license, the Department issued a suspension under 75 Pa. C.S. § 1532(b)(2). By continuing to drive without a license after incurring the first suspension, Driver incurred a second suspension in 2010 under 75 Pa. C.S. § 1543(c)(1). Driver contends the Department did not notify him of either suspension until 2017.

To succeed in challenging the license suspensions, Driver must establish two factors. First, he must show unreasonable delay by the Department in imposing the suspensions. *Pokoy v. Dep't of Transp., Bureau of Driver Licensing*, 714 A.2d 1162 (Pa. Cmwlth. 1998). Second, he must prove he relied to his detriment on a belief, arising from the Department's delay, that no suspension would be imposed. *Id.* We agree with the trial court that Driver failed to establish either factor.

---

[4] Our review of a trial court's decision in a driver's license suspension matter is limited to determining whether the factual findings of the trial court are supported by competent evidence and whether the trial court committed an error of law or abused its discretion. *Renfroe v. Dep't of Transp., Bureau of Driver Licensing*, 179 A.3d 644 (Pa. Cmwlth. 2018) (*en banc*).

## A. Unreasonable Delay

The trial court found as a fact that the Department timely notified Driver of the suspensions in 2008 and 2010 respectively. The trial court accordingly concluded there was no unreasonable delay by the Department in imposing the suspensions. We agree for several reasons.

Concerning the 2008 suspension, the trial court correctly observed that Driver admitted pleading guilty to the 2010 citation for driving during the pendency of the 2008 suspension. That admission and Driver's related guilty plea directly contradicted his argument that he did not know about the 2008 suspension. We therefore agree with the trial court's conclusion that Driver's own testimony eliminated any issue concerning his receipt of the 2008 notice of suspension.[5] Accordingly, we reject Driver's argument of unreasonable delay by the Department in notifying him of the 2008 suspension.

Regarding both suspensions, Driver argues the trial court should not have credited the Department's records indicating it timely mailed the notices. Driver points out that although the Department's records state the notices of suspension were mailed in 2008 and 2010, copies of the actual notices are not present, and there is no indication of the address to which they were sent. Driver suggests the trial court erred in inferring his receipt of the notices in the absence of a demonstrably correct address in the Department's records, because there is no affirmative indication in the Department's records that the notices were delivered.

However, there is likewise no indication that either the 2008 or 2010 notice was returned as undeliverable. Thus, the trial court permissibly accepted as credible the Department's records of mailing as evidence of Driver's receipt of the notices.

_____

[5] We also note with disapproval that, by Driver's own admission, he still continued to drive without a license even after pleading guilty in 2010 to driving while under the 2008 suspension.

6

*See Dep't of Transp., Bureau of Driver Licensing v. Grasse*, 606 A.2d 544 (Pa. Cmwlth. 1991) (Department's certification of driving record showing notice was given is competent to establish notice was sent; Department not required to show that licensee actually received notice). Driver failed to rebut that evidence. *See Kulick v. Dep't of Transp., Bureau of Driver Licensing*, 666 A.2d 1148 (Pa. Cmwlth. 1995) (merely denying receipt of suspension notice failed to satisfy licensee's burden to prove non-receipt); *Grasse* (presumption of receipt of notice not rebutted by denying receipt).

Moreover, Driver testified that at the time the notices were sent in 2008 and 2010, he was using the DLeon identification. The record indicates the DLeon identification provided a different address from that associated with the Montanez identification where Driver stated he has resided since at least 2008. Driver's averment that he did not receive the 2008 and 2010 notices cannot support an inference that the Department's alleged delay in providing notice was unreasonable, because his own testimony suggests he was not residing at the address he provided to the Department. *See Commonwealth v. Zimmick*, 653 A.2d 1217 (Pa. 1995) (licensee estopped from arguing lack of notice of suspension, where he failed to provide Department with his current address).

Thus, to the extent there was any delay by the Department, Driver caused that delay. As the trial court aptly observed:

> [Driver] offered no explanation as to why he applied for and obtained state [i]dentifications under three vastly different names. The only logical conclusion, based upon a review of [the Department's exhibits], as well as [Driver's] own admissions at the Hearing, is that [Driver] intentionally sought to deceive the Department. [Driver] now attempts to use the administrative confusion caused by his deception to advance what is essentially an estoppel defense. The only reason that [Driver] was able to obtain the Montanez License in the first instance is because he used different information and a different name to avoid the

7

suspension(s) associated with his 2006, 2008, and 2010 violations of Sections 1501 and 1543 of the Vehicle Code.

*Montanez v. Dep't of Transp.* (Berks Cty. Docket No. 17-21788, filed October 23, 2018), slip op. at 9.

Driver nonetheless contends the Department acted unreasonably in failing to discover his deception sooner. He asserts that the facial recognition software that revealed his use of multiple identities was available several years earlier[6] and that the Department should have used it to discover Driver's multiple identities either in 2013 when he obtained a driver's license under the name of Montanez, or in 2016 when he obtained a CDL under that name. Essentially, Driver argues that although he acted unlawfully and intentionally in deceiving the Department by using multiple fraudulent identities, the Department was at fault because his intended deception succeeded for several years. Not surprisingly, Driver cites no authority whatsoever for this argument. We reject it as baseless and improper.

The trial court correctly concluded there was no unreasonable delay on the part of the Department.

### B. Detrimental Reliance

Having failed to establish the first of the two requisite factors, Driver cannot succeed in his appeal. However, in the interest of completeness, we briefly discuss the second factor. We again agree with the trial court, in that Driver failed to sustain his burden of proving detrimental reliance on the absence of suspensions. Having pleaded guilty in 2010 to violating the 2008 suspension, Driver demonstrated his awareness of that suspension. Therefore, he cannot have reasonably relied on the

---

[6] Contrary to Driver's suggestion, there is no evidence in the record indicating when such software became available, when the Department obtained it, or when and to what extent the Department implemented its use.

absence of a suspension in obtaining either his 2013 driver's license or his 2016 CDL.

Notably, once Driver became licensed using the Montanez identity in 2013, he did not surrender that license in order to commence the running of either suspension. Instead, in 2016, he proceeded to train for and obtain a CDL using the Montanez identity. Presumably, by using a new identity, he obtained both licenses without disclosing the existence of his prior suspensions. Rather than demonstrating reasonable detrimental reliance, his conduct demonstrates that he deliberately deceived the Department by disguising his true identity. Driver cannot have reasonably relied on the Department's failure to discover his deception.[7]

## C. Procedural Due Process

In his final argument, Driver asserts the Department's unreasonable delay in issuing suspension notices deprived him of his opportunity for a timely challenge to

---

[7] We reject as facially meritless Driver's suggestion that his conduct was harmless and should be tolerated or excused because (he claims) he never injured anyone in an accident. His related assertion that his driving record was good enough to allow him to obtain a CDL is also meritless. He obtained the CDL under the Montanez identity. However, his traffic citations and suspensions were issued under a different name (DLeon), address, date of birth, Department identification number, and Social Security number. There is no evidence in the record that Driver disclosed the DLeon record as his when pursuing either his driver's license or his CDL. Indeed, the trial court specifically concluded the purpose of creating the Montanez identity was to deceive the Department concerning Driver's past record.

Driver argues, however, that he has had no citations since obtaining his driver's license and CDL. He suggests that imposing the suspensions now would not serve the Department's interest in protecting the public from unsafe drivers. We disagree. Moreover, the Department and the public also have an interest in knowing the true identities of those who are operating motor vehicles, in order to ensure that those persons are financially responsible in the event of an accident. An individual who has repeatedly flouted the law by continuing to drive without a license despite three citations and the imposition of two suspensions for that conduct, and who has deceived the Department and the public by using multiple fraudulent identities while doing so, cannot by any stretch of the imagination be called a safe or responsible driver.

9

the suspensions.  Because there was no unreasonable delay by the Department, Driver's due process argument also fails.

## IV. Conclusion

For the foregoing reasons, we affirm the order of the trial court.


_____
ELLEN CEISLER, Judge

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gonzalo Montanez,             :
            Appellant    :
             :
      v.          :    No. 1150 C.D. 2018
             :
Commonwealth of Pennsylvania,    :
Department of Transportation,     :
Bureau of Driver Licensing       :

# **O R D E R**

AND NOW, this 10th day of July, 2019, the order of the Berks County Court of Common Pleas is AFFIRMED.

_____
ELLEN CEISLER, Judge