IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sabrina Lynn Hufnagle, : 
               Appellant : 
           : 
          v. :   No. 1475 C.D. 2023
           : 
Commonwealth of Pennsylvania, :   Submitted: June 3, 2025
Department of Transportation, : 
Bureau of Motor Vehicles : 


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE LORI A. DUMAS, Judge

OPINION
BY JUDGE McCULLOUGH                  FILED: August 1, 2025

Sabrina Lynn Hufnagle (Licensee) appeals from the order entered in the Court of Common Pleas of Lycoming County (trial court) on November 14, 2023, denying her statutory appeal[1] of a 12-month suspension of her operating privilege imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT). Licensee's operating privilege was suspended pursuant to the Vehicle Code's Implied Consent Law, 75 Pa.C.S. § 1547(b) (Implied Consent Law), as a result of her refusal to submit to chemical testing. After careful review, we affirm.

## Background

The relevant facts and procedural history of this case are as follows. On November 14, 2022, at approximately 4:00 a.m., Officer Brian Yoas (Officer Yoas) of the Old Lycoming Police Department responded to a report made by a resident of a

---

[1] *See* 75 Pa.C.S. § 1550(a) (providing right to appeal license suspension to the court of common pleas).

suspicious female standing on the front porch of her home (Residence). Licensee was subsequently arrested for suspicion of driving under the influence of alcohol (DUI),[2] and she refused to submit to chemical testing.

DOT sent Licensee notice that her driving privilege was suspended for one year for refusing to submit to a chemical test. Licensee appealed to the trial court, which held a hearing on June 13, 2023, where Officer Yoas and Licensee testified. Officer Yoas recounted that during his initial contact with Licensee, he observed that she was actively bleeding from her face and "appeared to just look into the distance confused and kept on looking back at [him] like she didn't know what [he] said." (Reproduced Record (R.R.) at 16a.) Licensee told him that she had been driving home from a friend's house where she had a few beers, and that she had crashed her vehicle, a white Buick, on her way home. Police located Licensee's vehicle on a dirt road close to the highway, about one half mile from the Residence. Licensee's car had overturned, and it was resting on its roof.

---

[2] The Vehicle Code defines the offense of DUI as follows:

> **(a) General impairment**.--
>
> (1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.
>
> (2) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa. C.S. § 3802(a)(1)-(2).

Licensee refused treatment from the emergency medical services personnel who had responded to the scene. Officer Yoas asked Licensee to go with him to the police station and, while she initially refused, her parents, who had also arrived at the scene, convinced her to comply with the request. Officer Yoas explained that he intended to ask Licensee to undergo field sobriety testing at the police station because he detected the odor of alcohol on her person and she exhibited delayed speech. (R.R. at 20a.) At the police station, Licensee told Officer Yoas that "the last road that she knew that she was on was north State Route 15 highway [and] . . . the last time she saw a clock it was [2:00 a.m]." (R.R. at 22a.) After Licensee performed poorly on several field sobriety tests, Officer Yoas asked her to take a preliminary breath test, which Licensee refused.

Officer Yoas recounted that he then placed Licensee under arrest for suspicion of DUI and advised her that they would be going to a local hospital, whether or not she voluntarily agreed to the transport. (R.R. at 24a-25a.) Licensee agreed to go to the hospital in an ambulance, where Officer Yoas spoke with her in the emergency room and read to her the DOT DL-26B Request for Chemical Testing form (DL-26B form) verbatim.[3] Officer Yoas testified that Licensee appeared to be actively listening to him when he read her the DL-26B form and that she did not ask any questions about it. When Officer Yoas asked Licensee if she understood what he had read, she "looked away from [him] and discontinued the conversation." (R.R. at 28a-29a.) Officer Yoas testified that, when he asked Licensee if she would undergo chemical testing, she did not speak, which he considered a refusal. (R.R. at 29a.)

On cross-examination, Officer Yoas acknowledged that he did not place Licensee in handcuffs during the transport from the Residence to the police station.

_____

[3] The DL-26B form included a sentence advising Licensee that she was under arrest for DUI in violation of Section 3802 of the Vehicle Code. (*See* Trial Ct. Op., 11/14/23, at 6.; R.R. at 26a.)

Officer Yoas reiterated that Licensee informed him that she left her friend's home at 2:00 a.m., where she drank two beers. (R.R. at 32a.) Officer Yoas indicated that although he told Licensee that she was being arrested at the police station, he did not handcuff her at that time. Officer Yoas also did not handcuff Licensee at the hospital because she was being treated by physicians and was lying in bed. Officer Yoas indicated that, while he intended to take Licensee into custody, placing her in handcuffs was not necessary due to her cooperation and the fact that she was being treated by medical personnel. (R.R. at 35a.) When asked whether it is standard police procedure to handcuff someone once they are arrested, Officer Yoas explained that "it varies from time to time" and that it depends upon the particular circumstances. (R.R. at 34a, 39a.)

Licensee testified that she could not recall the specifics of the accident itself, but that she did remember what occurred afterwards. (R.R. at 42a-43a.) Licensee indicated that Officer Yoas did not inform her she was under arrest or handcuff her during the transport to the police station or after she performed the field sobriety tests. (R.R. at 45a.) Licensee testified that she did not recall Officer Yoas speaking to her about the information contained in the DL-26B form and that her injuries, including a skull fracture, may have contributed to her confusion. (R.R. at 45a-47a.) Licensee additionally indicated that at no point during the evening did she feel that she had been arrested or was not free to leave. (R.R. at 47a.)

The parties submitted briefs to the trial court following the hearing. On November 14, 2023, the trial court entered an opinion and order denying Licensee's appeal. This appeal followed.[4]

---

[4] "Our standard of review in a license suspension case is to determine whether the factual findings of the trial court are supported by [substantial] evidence and whether the trial court committed an error of law or an abuse of discretion." *Chojnicki v. Department of Transportation, Bureau of Driver Licensing*, 332 A.3d 883, 886 n.2 (Pa. Cmwlth. 2025).

4

## Issues

Licensee raises three issues on appeal, in which she challenges the trial court's determination that Officer Yoas placed her under arrest before he requested that she submit to a blood draw; contends that Officer Yoas did not have reasonable grounds to place her under arrest[5]; and argues that the Implied Consent Law is unconstitutional because it allows for license suspension based on an arrest supported by a standard less demanding than probable cause. We will address each of Licensee's arguments in turn.

## Discussion

### A. Timing of Arrest

Licensee first challenges the trial court's determination that Officer Yoas placed her under arrest before he requested that she submit to a blood draw, where he did not handcuff her during the transport to the police station or on the way to the hospital. Licensee acknowledges that the DL-26B form included language advising her that she was under arrest for DUI, but asserts that Officer Yoas never told her that she was not free to leave. According to Licensee, her testimony at the hearing demonstrates that she never felt that she was not free to leave during the incident, or that she was in Officer Yoas's custody or control. (Licensee's Br., at 6-9.)

Initially, Section 1547 of the Vehicle Code states in pertinent part:

> **§ 1547. Chemical testing to determine amount of alcohol or controlled substance**
>
> **(a) General rule**.--Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to

---

[5] We note that because license suspension cases are civil matters, the applicable reasonable grounds standard is less rigorous than the probable cause standard required to substantiate an arrest in a criminal prosecution. *Walkden v. Department of Transportation, Bureau of Driver Licensing*, 103 A.3d 432, 437 (Pa. Cmwlth. 2014).

5

one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of section . . . 3802[.]

**(b) Civil penalties for refusal**.--
(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

75 Pa.C.S. § 1547(a), (b)(1).

To sustain a license suspension under the Implied Consent Law, DOT must establish:

> (1) **the licensee was arrested for [DUI] by a police officer having reasonable grounds to believe that the licensee was driving while under the influence**, (2) the licensee was requested to submit to a chemical test, (3) the licensee refused to do so and (4) the licensee was warned that refusal would result in a license suspension. Once DOT meets this burden, the burden shifts to the licensee to establish that he or she either was not capable of making a knowing and conscious refusal or was physically unable to take the test.

*Chojnicki*, 332 A.3d at 886 (emphasis added).

"An arrest for purposes of Section 1547 has been defined as any act that indicates an intention to take a person into custody and subjects that person to the actual control and will of the arresting officer." *Nornhold v. Department of Transportation, Bureau of Driver Licensing*, 881 A.2d 59, 62 (Pa. Cmwlth. 2005). Whether a licensee

6

has been placed under arrest is a factual rather than a legal determination, and the focus of the inquiry is on whether the licensee should infer from the totality of the circumstances that she is under the custody and control of the police officer. *Id*.; *see also Welcome v. Department of Transportation, Bureau of Driver Licensing*, 647 A.2d 971, 974 (Pa. 1994) (stating that "the issue thus becomes whether, under the totality of the circumstances, the **reasonable impression** of the licensee should have been that he was subject to the officer's custody and control at the time he refused the chemical test") (emphasis added).

Here, the trial court determined the evidence presented at the hearing established Licensee was under arrest before Officer Yoas asked her to submit to a blood draw. In doing so, the court explained:

> [T]he [c]ourt finds that [Licensee] was arrested prior to being requested to submit to chemical testing. The [c]ourt finds the testimony of Officer Yoas credible that he informed petitioner she was under arrest at the police station and that he read the DL-26B to [Licensee] verbatim, including that portion informing her she was "now under arrest for driving under the influence." While [Licensee] testified to the contrary, she admittedly could not remember everything that happened that night. The fact that [Licensee] was not placed in handcuffs is not significant, as [Licensee] was injured, was later receiving medical treatment at the hospital, and was not in the position to evade the officer at that time.

(Trial Ct. Op., 11/14/23, at 5-6.)

We agree with the trial court's assessment, as it is fully supported by the record. Officer Yoas unequivocally testified he informed Licensee at the police station that she was under arrest for suspicion for DUI, testified to his intent to take her into custody, and recounted that at the hospital, he read the DL-26B form to her verbatim, which included language advising her that she was under arrest for DUI. Officer Yoas

7

indicated that Licensee appeared to be actively listening to him while he read her the DL-26B form and that she did not ask him any questions about it. While Officer Yoas chose not to physically restrain Licensee by placing her in handcuffs, he explained that handcuffs were not necessary because Licensee cooperated with authorities and was undergoing treatment for her head injury. He further testified that it is not necessarily standard police procedure to handcuff someone once they are arrested, and it can vary depending upon the particular circumstances.

Although Licensee testified that she never felt she was not free to leave while at the police station or the hospital, it was within the trial court's discretion as the ultimate fact finder to find Officer Yoas's testimony more credible than that of Licensee. *See Byler v. Department of Transportation*, *Bureau of Driver Licensing,* 883 A.2d 724, 729 (Pa. Cmwlth. 2005) (stating that credibility determinations are for trial courts to resolve rather than appellate courts). Accordingly, because the totality of the circumstances demonstrate that Licensee should have reasonably inferred she was under Officer Yoas's custody and control at the time she refused chemical testing, her first issue merits no relief. *See Nornhold*, 881 A.2d at 62.

## B. Reasonable Grounds for Arrest

Licensee next challenges the trial court's determination that Officer Yoas had reasonable grounds to place her under arrest for DUI. Licensee maintains that because the evidence failed to establish the time at which she last drove her vehicle, Officer Yoas lacked reasonable grounds to believe that she was incapable of driving safely at the time she operated it. (Licensee's Br., at 9.)

To begin, we reiterate that in a license suspension case, DOT must prove the licensee was arrested for DUI by a police officer having reasonable grounds to believe that the licensee was driving while under the influence. *See Chojnicki*, 332

8

A.3d at 886. "The question of whether an officer had reasonable grounds to arrest a licensee is a question of law fully reviewable by this court on a case-by-case basis." *Yencha v. Department of Transportation, Bureau of Driver Licensing*, 187 A.3d 1038, 1044 (Pa. Cmwlth. 2018). "**The test for whether a police officer has reasonable grounds to believe that a licensee drove while intoxicated is not demanding**; it requires even less proof than what is necessary to establish probable cause for a criminal prosecution." *Id.* (emphasis added). In assessing whether DOT has met this burden, "we consider the totality of the circumstances and determine, as a matter of law, whether a person in the position of the arresting officer could have reasonably reached this conclusion." *Id.*

Instantly, the trial court concluded that DOT met this burden, and explained its rationale as follows:

> [Licensee] was involved in a single vehicle accident, which suggests inability to operate a vehicle safely. She seemed confused to the police officer and was unable to pass [field sobriety tests], admitted to the officer that she had been drinking, and showed other visible signs of intoxication. The Court finds that, under the totality of the circumstances, Officer Yoas had reasonable grounds to place [Licensee] under arrest.

(Trial Ct. Op., at 6-7.)

The evidence fully supports the trial court's determination that Officer Yoas had reasonable grounds to place Licensee under arrest for DUI. The record reflects that, during Officer Yoas's initial interaction with Licensee at the Residence, she appeared confused and admitted to drinking alcohol prior to her single car accident. That accident resulted in Licensee's car being turned completely upside down and she could not recall any of the details of the impact itself. Licensee also smelled of alcohol, exhibited delayed speech, and failed multiple field sobriety tests. In light of the totality

9

of the circumstances, the evidence clearly demonstrates Officer Yoas had reasonable grounds to believe Licensee operated her vehicle while under the influence of alcohol. Licensee's argument to the contrary merits no relief.

### C. Constitutionality of the Implied Consent Law[6]

Lastly, Licensee argues that the Implied Consent Law is unconstitutional because it allows for suspension of a driver's operating privilege based on an arrest supported by reasonable grounds, rather than the more stringent standard of probable cause. (Licensee's Br., at 10-11.) In support of this contention, Licensee relies on *Birchfield v. North Dakota*, 579 U.S. 438 (2016), a United States (U.S.) Supreme Court case that, according to Licensee, "held that the justification for civil consequences of refusing a blood test would not be set aside if the person so arrested had been arrested on probable cause." *Id.* at 11. Licensee additionally maintains that the doctrine of unconstitutional conditions operates to invalidate the Implied Consent Law.

We begin by addressing Licensee's argument based on *Birchfield*, a case involving a challenge to Minnesota and North Dakota laws that made it **a crime** for a motorist suspected of DUI to refuse a blood test required under those states' implied consent laws. *Birchfield*, 579 U.S. at 451-52. The *Birchfield* Court, in the context of a Fourth Amendment challenge,[7] concluded that it is unreasonable to impose criminal penalties on a motorist who refuses an intrusive blood test, reasoning that "[t]here must be a limit to the consequences to which motorists may be deemed to have consented

---

[6] For questions of constitutional law, our standard of review is *de novo* and our scope of review is plenary. *Hughes v. Pennsylvania Public Utility Commission*, 322 A.3d 982, 989 n.5 (Pa. Cmwlth. 2024).

[7] The Fourth Amendment to the United States Constitution provides in relevant part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. "The Amendment thus prohibits 'unreasonable searches,' and [U.S. Supreme Court] cases establish that the taking of a blood sample or the administration of a breath test is a search." *Birchfield*, 579 U.S. at 455.

by virtue of a decision to drive on public roads." *Id.* at 477. The Court expressly qualified its holding, however, by stating that "nothing we say here should be read to cast doubt" on the constitutionality of "implied consent laws that impose **civil penalties** . . . on motorists who refuse to comply" with giving a blood sample. *Id.* at 476-77 (emphasis added). Thus, the Court was careful to distinguish between civil and criminal penalties for DUI arrests.

Since *Birchfield*, this Court has repeatedly upheld the constitutionality of the Implied Consent Law. In *Marchese v. Department of Transportation, Bureau of Driver Licensing*, 169 A.3d 733 (Pa. Cmwlth. 2017), the licensee invoked *Birchfield* to argue that the Implied Consent Law was unconstitutional. This Court rejected the licensee's attempt to extend the scope of the holding of *Birchfield*, and made clear that the case's application is limited to implied consent laws imposing criminal penalties. In doing so, the *Marchese* Court stated:

> Given the *Birchfield* Court's explicit limitation on its holding to implied consent laws imposing criminal penalties, we reject [the] [l]icensee's contention that it must logically be extended to render unconstitutional implied consent laws which provide for only civil penalties for refusal of a blood test. Such an interpretation would be contrary to the U.S. Supreme Court's limiting language in *Birchfield*.

*Id.* at 739-40.

More recently, in *Renfroe v. Department of Transportation, Bureau of Driver Licensing*, 179 A.3d 644 (Pa. Cmwlth. 2018), an *en banc* panel of this Court considered a licensee's argument "that *Birchfield* should be extended to civil license suspensions because a licensee cannot be punished, either civilly or criminally, for refusing to submit to a blood test." *Id.* at 648. This Court disagreed, emphasizing the settled distinction between civil license suspension proceedings and criminal DUI

11

proceedings. We therefore declined to extend *Birchfield* to civil license suspension proceedings and reaffirmed "that *Birchfield* **does not apply to civil license suspensions**." *Id.* at 651 (emphasis added). Therefore, Licensee's argument based on *Birchfield* in this civil license suspension case merits no relief.

With respect to Licensee's contention that the Implied Consent Law violates the unconstitutional conditions doctrine,[8] the *Marchese* Court also considered this argument and concluded it is meritless. Specifically, the Court determined:

> [We] reject [l]icensee's contention that Pennsylvania's Implied Consent Law violates the unconstitutional conditions doctrine by conditioning a person's driver's license on the implied consent to submit to a warrantless blood test in violation of his Fourth Amendment rights against unlawful searches and seizures. It is well settled in Pennsylvania that driving is a privilege, not a property right.
>
> . . . .
>
> [The] Implied Consent Law subjects a Pennsylvania resident seeking a driver's license to the reasonable condition of an implied consent to chemical testing under pain of civil license suspension following a DUI arrest. In accord with the Commonwealth's legitimate objective of combatting drunk driving, it may reasonably condition continuation of an operator's driving privilege upon the requirement to submit to a warrantless blood test following an arrest for DUI under pain of a civil license suspension. The purpose of the exclusionary rule for Fourth Amendment violations is to deter police officials from engaging in improper conduct for the purpose of obtaining **criminal convictions**. The Implied Consent Law does not authorize police officers to seize a

---

[8] This doctrine provides that "the government may not deny a benefit to a person because he exercises a constitutional right" and protects these rights by preventing the government from coercing citizens into giving them up. *Koontz v. Saint Johns River Water Management District*, 570 U.S. 595 (2013).

12

person's blood without permission; instead, it imposes an ultimatum upon the DUI arrestee to either submit to the test or face the **civil consequences**. **As such, a civil license suspension under the Implied Consent Law does not implicate Fourth Amendment rights. Consequently, the unconstitutional conditions doctrine is inapplicable here**.

*Marchese*, 169 A.3d at 741(emphasis added; citations omitted).

In light of the foregoing, given that this Court has expressly determined that the unconstitutional conditions doctrine is inapplicable in the context of civil license suspension proceedings, Licensee's argument based on the doctrine lacks merit.

## Conclusion

In sum, we conclude the trial court properly determined Licensee was under arrest before she refused chemical testing, that Officer Yoas had reasonable grounds to arrest her for DUI, and that Licensee's constitutional challenge to the Implied Consent Law fails in light of controlling precedent on this issue. Accordingly, we affirm the order of the trial court.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sabrina Lynn Hufnagle,          :
            Appellant        :
                              :
            v.             :    No. 1475 C.D. 2023
                              :
Commonwealth of Pennsylvania,  :
Department of Transportation,   :
Bureau of Motor Vehicles       :

## ***ORDER***

AND NOW, this 1st day of August, 2025, the order entered in the Court of Common Pleas of Lycoming County on November 14, 2023 is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge