IN THE COMMONWEALTH COURT OF PENNSYLVANIA

George Bechtel,                           :
              Appellant                 :
                                         :
              v.                        :
                                         :
Commonwealth of Pennsylvania,             :
Department of Transportation,             :   No. 1194 C.D. 2024
Bureau of Driver Licensing                :   Argued: December 10, 2025


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge
             HONORABLE LORI A. DUMAS, Judge
             HONORABLE MATTHEW S. WOLF, Judge

OPINION BY
JUDGE COVEY                       FILED: February 2, 2026


      George Bechtel (Licensee) appeals from the Centre County Common Pleas Court's (trial court) August 20, 2024 order dismissing his appeal from the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing's (DOT) 12-month suspension of his driving privileges pursuant to Section 1547(b) of the Vehicle Code, commonly known as the Implied Consent Law,[1] and reinstating his license suspension. Licensee presents one issue for this Court's review: whether, when a licensee exercises his right to refuse to consent to a warrantless blood draw, the Implied Consent Law violates search and seizure and due process protections guaranteed by the United States (U.S.) and Pennsylvania Constitutions by imposing a minimum 12-month driver's license suspension and the

---

[1] 75 Pa.C.S. § 1547(b).

substantial financial burden attendant to license reinstatement. After thorough review, this Court affirms.

On December 31, 2023, a Pennsylvania State Police Trooper (Trooper) arrested Licensee for Driving Under the Influence (DUI). The Trooper took Licensee to the hospital for a blood draw and provided Licensee the standard chemical testing warnings on DOT's DL-26 Form[2] pursuant to the Implied Consent Law. The Trooper did not have a warrant requiring Licensee to submit to the blood test. Licensee refused the blood test. On February 5, 2024, DOT notified Licensee that his driver's license would be suspended for one year due to the chemical testing refusal, effective March 19, 2024. On March 4, 2024, Licensee appealed to the trial court. On August 1, 2024, Licensee filed in the trial court a Motion to Bar License Suspension (Motion). Following a hearing on August 20, 2024, the trial court dismissed Licensee's appeal, denied the Motion, and reinstated the suspension of his driving privileges. Licensee appealed to this Court.[3] On September 17, 2024, the trial court ordered Licensee to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule

---

[2] DOT's DL-26 Form sets forth the prescribed language of the warning to be given to motorists arrested for DUI that explains the penalties for refusing chemical tests. Law enforcement use the DL-26 Form to satisfy the requirements of Section 1547(b) of the Vehicle Code during DUI arrests.

[3] This Court's "review in a license suspension case is to determine whether the factual findings of the trial court are supported by [substantial] evidence and whether the trial court committed an error of law or an abuse of discretion." *Chojnicki v. Dep't of Transp., Bureau of Driver Licensing*, 332 A.3d 883, 886 n.2 (Pa. Cmwlth. 2025) (quoting *Negovan v. Dep't of Transp., Bureau of Driver Licensing*, 172 A.3d 733, 735 n.4 (Pa. Cmwlth. 2017)). "An abuse of discretion occurs where in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will." *Tullytown Borough v. Armstrong*, 129 A.3d 619, 622 (Pa. Cmwlth. 2015) (quotation marks omitted).

Licensee filed a request for a stay of his license suspension pending appeal in the trial court, which the trial court granted.

1925(b) Statement).  Licensee timely filed his Rule 1925(b) Statement.  On October 18, 2024, the trial court filed its opinion pursuant to Rule 1925(a).

Initially, Section 1547 of the Vehicle Code provides, in relevant part:

**(a) General rule.--***Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance* if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of [S]ection . . . 3802 [of the Vehicle Code, 75 Pa.C.S. § 3802] (relating to driving under influence of alcohol or controlled substance) . . . .

**(b) Civil penalties for refusal.--**

(1) If any person placed under arrest for a violation of [S]ection 3802 [of the Vehicle Code] is requested to submit to chemical testing and refuses to do so, *the testing shall not be conducted but upon notice by the police officer*, [*DOT*] *shall suspend the operating privilege of the person* as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

. . . .

(2) It shall be the duty of the police officer to inform the person that:

(i) the person's operating privilege will be suspended upon refusal to submit to chemical testing and *the person will be subject to a restoration fee of up to $2,000*[*.00*]; and

(ii) if the person refuses to submit to chemical breath testing, upon conviction or plea for violating [S]ection 3802(a)(1) [of the Vehicle Code], the person will be subject to the penalties provided in [S]ection 3804(c) [of the Vehicle Code, 75 Pa.C.S. § 3804(c)] (relating to penalties).

3

75 Pa.C.S. § 1547 (italic emphasis added).

Licensee argues that the portion of Section 1547 of the Vehicle Code that penalizes the exercise of the right to refuse a blood test violates constitutional search and seizure and substantive due process protections.[4] Licensee contends that since this en banc Court addressed this issue in 2018, the Pennsylvania Supreme Court decided *Department of Transportation, Bureau of Diver Licensing v. Middaugh*, 244 A.3d 426 (Pa. 2021), and *Commonwealth v. Taylor*, 309 A.3d 754 (Pa. 2024),[5] which require this Court to reexamine Section 1547 of the Vehicle Code. Specifically, Licensee proclaims that, in those cases, our Supreme Court held that even if labeled a privilege, retaining a driver's license is an important constitutionally protected interest. *See Middaugh*.

---

[4] The Fourth Amendment to the U.S. Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. Article I, section 8, of the Pennsylvania Constitution (relating to security from searches and seizures) guarantees:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

PA. CONST. art. I, § 8.

[5] *Taylor* is a juvenile court case wherein the Pennsylvania Supreme Court held, *inter alia*, that the juvenile court violated a juvenile's right under the Fifth Amendment to the U.S. Constitution (Fifth Amendment), U.S. CONST. amend. V, not to incriminate himself by conditioning its ultimate finding of the juvenile's amenability to treatment upon a requirement that the juvenile admit guilt for offenses he was alleged to have committed, and that the juvenile court's penalization of the juvenile for exercising his Fifth Amendment right constituted a structural error. Accordingly, *Taylor* is inapposite and will not be addressed further herein.

4

DOT rejoins that Licensee failed to show how the Implied Consent Law *clearly, palpably, and plainly* violates either the U.S. or Pennsylvania Constitution. DOT retorts that because drunk driving is a very serious offense, the General Assembly properly exercised its police power by enacting the Implied Consent Law to provide law enforcement with the statutory authority to expeditiously remove drunk drivers from Pennsylvania roadways before they can harm themselves or other motorists. As such, DOT asserts that the Implied Consent Law is the most effective tool for improving traffic safety compared to the other methods that have been proposed. DOT maintains that because a licensee who is arrested for DUI has a *statutory* right to refuse chemical testing, but not a *constitutional* right to refuse chemical testing, there is no merit to Licensee's argument that the Implied Consent Law violates search and seizure rights guaranteed by the U.S. and Pennsylvania Constitutions.

In 2018, this Court decided *Garlick v. Department of Transportation, Bureau of Driver Licensing*, 176 A.3d 1030 (Pa. Cmwlth. 2018) (en banc), wherein the licensee argued that, under *Boseman v. Department of Transportation, Bureau of Driver Licensing*, 157 A.3d 10 (Pa. Cmwlth. 2017), the U.S. Supreme Court's ruling in *Birchfield v. North Dakota*, 579 U.S. 438 (2016), applicable to warrantless chemical tests of blood in *criminal* proceedings, had no impact on *civil* license suspension appeals. Therein, this Court explained:

> In *Boseman*, the licensee's license was suspended when she refused to submit to a test of her blood under the Implied Consent Law after being arrested for suspicion of DUI. [*See i*]*d*. at 12. On appeal to this Court, the licensee claimed, *inter alia*, that under *Birchfield*, in the absence of exigent circumstances, the arresting officer had to obtain a warrant for a test of her blood, and his failure to do so required that her appeal be sustained. [*See i*]*d*. at 19. [This Court] concluded that *Birchfield* was not applicable because "[b]y its own language ***Birchfield* does not apply**

5

**to implied consent laws that merely impose civil penalties**." *Id*. at 21 (citing *Birchfield*, . . . [579 U.S. at 477 []]) ("Petitioners do not question the constitutionality of [implied[ ]consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply], and **nothing [the U.S. Supreme Court] say[s] here should be read to cast doubt on them**.")). Rather, [this Court] said, "***Birchfield* addressed the constitutionality of a [s]tate statute that made it a crime to refuse a warrantless blood test after being arrested for DUI**." *Id*. (emphasis [omitted]). Thus, [this Court] concluded, **while "*Birchfield* may have some impact in criminal DUI proceedings in Pennsylvania where enhanced penalties based on refusal of a blood test are imposed**, **such is not the case before us in this civil license suspension appeal under the Implied Consent Law**." *Id*.

*Garlick*, 176 A.3d at 1036-37 (emphasis added); *see also Patane v. Dep't of Transp., Bureau of Driver Licensing*, 192 A.3d 335 (Pa. Cmwlth. 2018) (en banc); *Renfroe v. Dep't of Transp., Bureau of Driver Licensing*, 179 A.3d 644 (Pa. Cmwlth. 2018) (en banc); *Marchese v. Dep't of Transp., Bureau of Driver Licensing*, 169 A.3d 733 (Pa. Cmwlth. 2018).

In *Middaugh*, the Pennsylvania Supreme Court held: "[A] license suspension which is unreasonably delayed through no fault of the driver[] can potentially result in a denial of due process." *Middaugh*, 244 A.3d at 437. The *Middaugh* Court reasoned:

> [A]ppeals of license suspensions based on the staleness of the underlying conviction bear **some parallels to** litigation in which **other recognized**, **but non-fundamental**, **rights** are at stake - such as the right to engage in lawful employment at issue in *Ladd* [*v. Real Estate Commission*, 230 A.3d 1096 (Pa. 2020)]: as in *Ladd*, such appeals involve as-applied challenges to presumptively valid statutory provisions; the regulation under review affects the continued possession of an important, constitutionally-protected interest;[FN]11 and where the suspension is delayed for an extraordinary period of time, the staleness

6

of the predicate conviction tends to diminish the connection between the suspension and the statute's objectives, particularly where there have been no Vehicle Code violations in the interim.

> [FN]11 *See Bell v. Burson*, 402 U.S. 535 . . . (1971) (noting that the ability to drive an automobile constitutes a protected interest whether the state refers to it as a right or a privilege); *see also id*. (recognizing that the continued possession of driving privileges may be essential to the pursuit of one's livelihood)[.]

*Middaugh*, 244 A.3d at 435-36 (emphasis added).

However, in *Ferguson v. Department of Transportation, Bureau of Driver Licensing*, 340 A.3d 278 (Pa. 2025), the Pennsylvania Supreme Court explained:

> A claim that state action violates substantive due process invokes a means-end inquiry pursuant to which the reviewing court examines the relationship between the law and the governmental interest the law seeks to achieve. *See Ladd*, . . . 230 A.3d [at] 1108 . . . (citing and quoting *Nixon v. Commonwealth*, . . . 839 A.2d 277, 286-87 & n.15 ([Pa.] 2003)). Such a challenge may be facial in nature, as [the Pennsylvania Supreme Court] saw in *D.P. v. G.J.P.*, . . . 146 A.3d 204 ([Pa.] 2016), where a child's parents challenged a Domestic Relations Code[6] provision that gave the child's grandparents standing to file an action seeking partial physical custody solely based on the parents having separated. Applying strict judicial scrutiny as the appropriate means-ends inquiry because the statute burdened the parents' fundamental rights, [our Supreme Court] held the provision was not narrowly tailored to serve a compelling state interest and, as such, it violated the parents' substantive due process rights. [The Pennsylvania Supreme Court] therefore severed the offending language from the statute. *See id*. at 216-17; *see also Shoul* [*v. Dep't of Transp., Bureau of Driver Licensing*], 173 A.3d [669,] 682 [(Pa. 2017)] (holding that a provision of the Vehicle Code that imposed a lifetime disqualification from holding a commercial driver's

---

6 23 Pa.C.S. §§ 101-8415.

7

license for persons convicted of certain drug crimes while using a motor vehicle did not violate substantive due process because it was rationally related to the legitimate governmental interest in deterring drug trafficking). Whereas *D.P.* involved a fundamental right, thus triggering strict scrutiny, *Shoul* did not, and hence, **the right involved in that matter**, **as here**, **implicated rational-basis review**.

*Ferguson*, 340 A.3d at 284-85 (emphasis added).

The *Ferguson* Court expounded:

The present challenge is facial.[7] [The a]ppellant does not contend his situation is an outlier and that he should be exempt from an otherwise-valid statute. Instead, he maintains Section 3804(e) [of the Vehicle Code, 75 Pa.C.S. § 3804(e),] facially violates due process by excluding anyone with a prior [Accelerated Rehabilitative Disposition (]ARD[)] acceptance from the exception to the license suspension requirement that ordinarily follows from a DUI conviction.

**Legislation affecting driving privileges is evaluated under the rational basis test**. Where, as here, that standard is invoked as a matter of Pennsylvania constitutional law, the means-ends inquiry is still deferential but less so than if it had been implicated solely under the Fourteenth Amendment to the [U.S.] Constitution[, U.S. CONST. amend. XIV]. **The statute**, like all duly enacted legislation, **enjoys a strong**

---

[7] *Middaugh* involved an as applied challenge.

[I]n *Middaugh*, a driver's privileges were suspended based on a DUI conviction, but for reasons that did not appear in the record, [DOT] did not notify him of the suspension for 28 months. By that time his personal circumstances had changed to the point the trial court found he would suffer substantial prejudice from the unexplained delay. Considering that his driving record had remained clean in the interim, [our Supreme Court] found the suspension had "lost much of its effectiveness [to achieve] its underlying legislative purpose," thus denying the driver the "fundamental fairness" with which the Constitution demanded he be treated by the government. *Middaugh*, 244 A.3d at 439[.]

*Ferguson*, 340 A.3d at 285.

**presumption of validity, and it will only be invalidated if it violates the Constitution clearly, palpably, and plainly**. But instead of considering whether [the Court] may conceive of any plausible basis for the challenged provision, [**our Supreme Court**] evaluate[s] **whether the statute bears a real and substantial relation to the ends sought to be achieved, and is neither patently oppressive nor unnecessary to those ends**. In undertaking that evaluation, [the Pennsylvania Supreme Court] do[es] not purport to second-guess the wisdom or soundness of the public policy choices made by the General Assembly; [it] only ask[s] whether a constitutional violation has occurred. *See* . . . ; *Program Admin. Servs., Inc. v. Dauphin Cnty. Gen. Auth.*, 928 A.2d 1013, 1017-18 ([Pa.] 2007) ("[**I**]**t is the** [**l**]**egislature's chief function to set public policy and the courts' role to enforce that policy, subject to constitutional limitations**.").

*Ferguson*, 340 A.3d at 285-86 (citations and footnote omitted; emphasis added).

The *Ferguson* Court concluded:

The question becomes, then, whether it violates due process for the [l]egislature to determine that a driver in [the a]ppellant's position should not be eligible for the statutory exception.

[The Pennsylvania Supreme Court] find[s] that such a legislative determination is neither unfair nor unreasonable, nor is the prescribed action oppressive or unnecessary to the legislative goals involved. When a driver is charged with DUI as a first-time offender under [Section 3802 of the Vehicle Code, 75 Pa.C.S. § 3802,] as a matter of legislative grace the driver may, at the district attorney's discretion, accept the terms of ARD as an avenue to avoid the criminal process. Such a driver is under no compulsion to accept ARD and enjoys the full panoply of constitutional rights attendant to any criminal prosecution. But ARD, if the defendant does accept it, is not a "trivial mechanism for avoiding a conviction and expunging an arrest record. Rather, it is an intensive process involving personal assessments, safety classes, and addiction treatment, if necessary, all under court supervision for six months to a year[.]" *Whalen v.* [*Dep't of Transp., Bureau of Driver Licensing*], . . . 32 A.3d 677,

9

> 684 ([Pa.] 2011); *see* [Section 3807(b) of the Vehicle Code,] 75 Pa.C.S. § 3807(b). The court-imposed conditions may include those "imposed with respect to probation after conviction of a crime," such as restitution, costs, administrative expenses, and any other conditions agreed to by the parties. [Pennsylvania Rule of Criminal Procedure 316(A),] Pa.R.Crim.P. 316(A); *see* 75 Pa.C.S. § 3807(b). In some instances, a suspension of driving privileges must accompany the ARD acceptance itself.

*Ferguson*, 340 A.3d at 287 (citations and footnote omitted).

Here, Licensee has not met his burden of proving that the Implied Consent Law violates either the U.S. or Pennsylvania Constitution "clearly, palpably, and plainly." *Id*. at 285. First, a licensee is deemed to have given consent to a chemical test of blood under the statute. *See* 75 Pa.C.S. § 1547(a). Thereafter, the licensee must expressly consent before any blood test is given. *See* 75 Pa.C.S. § 1547(b). Accordingly, because any blood test would be consensual, there is no unreasonable search and, therefore, no search and seizure violation under either the Fourth Amendment to the U.S. Constitution or article I, section 8, of the Pennsylvania Constitution.

Moreover, a licensee who is arrested for DUI and asked to submit to a chemical test of blood has a statutory right to refuse. *See* 75 Pa.C.S. § 1547(b)(1). Upon notification of the refusal by a police officer, DOT will impose an operating privilege suspension in accordance with Section 1547(b)(1) of the Vehicle Code and notify the licensee of the suspension. Thereafter, in accordance with Section 1550(a) of the Vehicle Code, 75 Pa.C.S. § 1550(a) (relating to judicial review), a licensee can file a timely statutory appeal from the suspension. After the licensee makes proper service of the appeal petition "upon [DOT's] legal office," *id*., the "filing and service of a petition for appeal from a suspension or revocation shall operate as a supersedeas until final determination of the matter by the court vested with the jurisdiction of such appeals." Section 1550(b)(1)(i) of the Vehicle Code, 75 Pa.C.S.

10

§ 1550(b)(1)(i). Accordingly, a licensee is afforded due process after he elects to refuse the requested chemical testing of blood or breath in accordance with Section 1547(b)(1) of the Vehicle Code.

As a licensee must consent before a blood test is given and he has a statutory right to refuse chemical testing, there is no merit to Licensee's argument that the Implied Consent Law violates search and seizure and due process protections guaranteed by the U.S. and Pennsylvania Constitutions. Nothing in *Middaugh* or *Taylor* changes this analysis. *Ferguson* especially supports the meritless nature of Licensee's argument, as it was decided after *Middaugh* and *Taylor*.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

George Bechtel,           :
           Appellant      :
                    :
         v.             :
                    :
Commonwealth of Pennsylvania,  :
Department of Transportation,    :   No. 1194 C.D. 2024
Bureau of Driver Licensing      :

# O R D E R

AND NOW, this 2nd day of February, 2026, the Centre County Common Pleas Court's August 20, 2024 order is affirmed.

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

George Bechtel, :
                    Appellant :
                                           :
                                           :
          v.                               :
                                           :   No. 1194 C.D. 2024
Commonwealth of Pennsylvania,              :   Argued: December 10, 2025
Department of Transportation,              :
Bureau of Driver Licensing                 :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE LORI A. DUMAS, Judge
          HONORABLE MATTHEW S. WOLF, Judge

CONCURRING OPINION
BY JUDGE McCULLOUGH                        FILED: February 2, 2026


        I respectfully concur in the result. I agree with the Majority that the

Implied Consent Law's[1] civil penalties for refusing to consent to a warrantless blood

test do not violate principles of substantive due process.[2]

---

[1] 75 Pa.C.S. § 1547(b).

[2] I disagree, however, with the Majority's blanket conclusion that the Pennsylvania
Supreme Court's decision in *Ferguson v. Department of Transportation, Bureau of Driver
Licensing*, 340 A.3d 278 (Pa. 2025), is controlling on this point. At issue in *Ferguson* was
"whether, consistent with due process, a driver who resolved an earlier DUI charge via accelerated
rehabilitative disposition (ARD) may have his privileges suspended based on a subsequent [driving
under the influence] [(]DUI[)] conviction." *Id.* at 281; *see also* 75 Pa.C.S. § 3804(e)(1), (2). After
conducting rational basis, means-ends review, the *Ferguson* Court held, in pertinent part, that the
suspension did not violate substantive due process principles. Central to the Court's holding was
the fact that the suspension was imposed for a *subsequent* DUI conviction, which demonstrated
that the ARD program had no deterrent effect on the licensee. *Ferguson*, 340 A.3d at 285-86.

        Here, the 12-month license suspension and other civil penalties at issue are not
imposed for a DUI conviction but, instead, for a refusal to consent to a warrantless blood test. It
**(Footnote continued on next page…)**

I further agree with the Majority's conclusion that both this Court's and the Pennsylvania Supreme Court's controlling Fourth Amendment precedents hold that the United States Supreme Court's decision in *Birchfield v. North Dakota*, 579 U.S. 438 (2016), does not apply in the civil context, *i.e.*, to situations where implied consent statutes impose only civil penalties for refusing to consent to a warrantless blood test. *See Commonwealth v. Hunte*, 337 A.3d 483, 511 & n.147 (Pa. 2025); *Commonwealth v. Bell*, 211 A.3d 761, 775-76 (Pa. 2019); *Patane v. Department of Transportation, Bureau of Driver Licensing*, 192 A.3d 335 (Pa. Cmwlth. 2018) (*en banc*); *Renfroe v. Department of Transportation, Bureau of Driver Licensing*, 179 A.3d 644 (Pa. Cmwlth. 2018) (*en banc*); *Garlick v. Department of Transportation, Bureau of Driver Licensing*, 176 A.3d 1030 (Pa. Cmwlth. 2018) (*en banc*); *Marchese v. Department of Transportation, Bureau of Driver Licensing*, 169 A.3d 733 (Pa. Cmwlth. 2017); *Boseman v. Department of Transportation, Bureau of Driver Licensing*, 157 A.3d 10 (Pa. Cmwlth. 2017). I also acknowledge that the Pennsylvania Supreme Court's precedents appear to preclude the application of the "unconstitutional conditions" doctrine in the implied consent context, at least where implied consent statutes impose only civil penalties for refusals. *See Hunte*, 337 A.3d at 511 n.149; *Bell*, 211 A.3d at 773 n.12.

I continue to conclude, however, consistent with my prior concurring opinions in *Price v. Department of Transportation, Bureau of Driver Licensing* (Pa. Cmwlth., No. 1873 C.D. 2016, filed September 29, 2017) (unreported)

---

involves no *criminal* wrongdoing at all, let alone recidivistic criminal wrongdoing. Nevertheless, I believe that the civil penalties for refusals do bear "a real and substantial relation to the ends sought to be achieved, and [are] neither patently oppressive nor unnecessary to those ends." *Id.* at 285. Importantly, and as I explain herein, that does not resolve the separate question of whether those penalties violate the Fourth Amendment to the United States Constitution. U.S. Const. amend. IV.

(McCullough, J., concurring), and *Gray v. Department of Transportation, Bureau of Driver Licensing* (Pa. Cmwlth., Nos. 1759 & 1760 C.D. 2016, filed June 9, 2017) (unreported) (McCullough, J., concurring), that *Birchfield* does not categorically hold that *all* civil penalties imposed to punish refusals of warrantless blood tests are valid under the Fourth Amendment merely because they are civil in nature. Rather, I believe *Birchfield* leaves open the possibility, and even the likelihood, that civil penalties may be so severe and coercive that they render involuntary any statutorily-imposed consent and, thereby, are unconstitutional. *See Hunte,* 337 A.3d at 511; *Bell*, 211 A.3d at 778, 781-84, 792 & n.7 (Wecht, J., dissenting). In my view, implied consent statutes that impose civil penalties for refusing to consent to a warrantless blood test should be analyzed under the standard totality-of-the-circumstances test to determine consent voluntariness. Such penalties likewise should be scrutinized under the unconstitutional conditions doctrine to determine whether they impermissibly burden or penalize the exercise of Fourth Amendment rights. *Bell*, 211 A.3d at 784-87 (Wecht, J., dissenting).

Nevertheless, because I believe the result reached by the Majority is compelled by precedents that bind this Court, I am constrained to concur in it.

_____
PATRICIA A. McCULLOUGH, Judge

PAM - 3